RASMUSEN and others, Respondents, vs. NEW YORK LIFE INSURANCE COMPANY, Appellant.

*September 10 — September 26, 1895.*

*Life insurance: Waiver of forfeiture.*

1. After default in payment of the annual premium on a life insurance policy, the insured sent the amount thereof, with interest, to a branch office of the company. The money was placed to his

Rasmusen and others vs. The New York Life Ins. Co.

credit and the matter referred to the home office, which insisted on a medical examination as a condition of reinstating the policy. The insured then refused to do anything further, and demanded that a receipt for the premium be sent him or that his money be returned. His letter to that effect was received by the branch office on or before May 22, and by the home office on May 24, but the money was not returned nor was any letter or communication of any kind sent to the insured from either office. The insured died on May 30. *Held*, that the company had waived the forfeiture resulting from the failure to pay the premium when due.

2. The insured was not bound in such case, in the absence of a request, to state the condition of his health.

3. The fact that the company retained the money merely for the purpose of giving the insured an opportunity to procure the proper health certificate — such intention on its part not having been communicated to the insured, although there was ample time before his death — did not prevent the waiver.

4. The act from which a waiver is deduced must be an intentional act done with knowledge of the material facts, but it is not necessary that there should be an intention to waive.

APPEAL from a judgment of the circuit court for St. Croix county: E. B. BUNDY, Circuit Judge. *Affirmed.*

This action is brought to recover upon a policy of life insurance issued by the defendant company upon the life of one Emil K. C. Rasmusen. The policy was issued December 26, 1890, and required the payment of an annual premium of $365 on October 28th of each year for twenty years, and contained a provision that the policy should become void if the annual premium was not paid when due, and all previous payments should be forfeited. The policy also contained a provision to the effect that no agent could extend the time for paying a premium, or waive any forfeiture, and that this power should only be exercised by the president, vice president, and actuary of the company. The first two annual premiums were paid, but the premium which fell due October 28, 1892, was not paid when due.

Prior to the 28th of October, 1890, and ever since that time, the defendant has maintained at Milwaukee, Wis., an

office called the "Wisconsin Branch Office," in which were certain agents, whose duties were to superintend the local agents in certain portions of the state of Wisconsin; to receive applications for insurance, and forward them for approval to the home office at New York City; to collect premiums on policies in force in the territory under its jurisdiction; to deliver policies issued by the home office; and to transact all business with policy holders within its territory, subject to the approval of the home office at New York City. After January 1, 1893, one Buckner was the agent of the defendant in charge of the books, business, and correspondence of the defendant conducted at said "Wisconsin Branch Office," and one Candee was an employee of the company at Milwaukee, and assisted in the transaction of business with the defendant in the Milwaukee office, under the title of "agency director."

In the month of April, 1893, one Borchsenius, acting on behalf of Emil K. C. Rasmusen, visited the Wisconsin branch office aforesaid, and offered to pay to said Buckner the premium on said policy which had become due October 28, 1892. Upon the making of this offer, Buckner stated to Borchsenius that in order to reinstate said policy it would be necessary to pay five per cent. interest upon the premium from October 28, 1892, and also to produce a letter from Dr. J. B. Patrick, who was the regularly appointed physician of the company at the village of Baldwin, Wis. On the 3d of May, 1893, Emil K. C. Rasmusen sent to the Milwaukee office a draft for $372.86, being the October premium, with five per cent. interest thereon, and inclosed at the same time a letter from Dr. Patrick to the effect that "Mr. Rasmusen appears to be in as good health as I have seen him in the past three or four years that I have known him." On the 5th of May, 1893, the agent Buckner transmitted to the home office a letter announcing the receipt of Rasmusen's remittance, and inclosing Dr. Patrick's state-

ment, and requesting the return of the renewal receipt. On the same day Buckner acknowledged the receipt to Rasmusen of the draft and Dr. Patrick's statement, and stating that the health statement had been forwarded to the home office, and that upon the return of the renewal receipt it would be sent to Rasmusen.   On the 11th day of May, 1893, a letter was sent from the home office to the Wisconsin branch office, signed by the president of the company, stating that the company would entertain a proposition for the reinstatement of Rasmusen's policy upon the receipt of the health certificate after a medical examination by Dr. Patrick. On the 15th day of May, 1893, Buckner wrote to Rasmusen, stating that the company required a medical examination by Dr. Patrick, and inclosing a blank for such examination, and requesting him to have the same made at an early date.   The draft which Rasmusen had sent to the Wisconsin office May 3d had been placed to the credit of the policy account of Rasmusen, and to his personal credit, on the books of the Milwaukee agency.   On the 18th day of May, 1893, on receipt of the letter last named, Rasmusen sent a letter to the Milwaukee office of the defendant company, dated at River Falls, Wis., where he then was staying, that he did not expect there would be so much red tape in the matter; that Mr. Borchsenius informed him that it would only be necessary to have Dr. Patrick write a letter in regard to his health, and send such letter with the premium and interest at five per cent.   The letter then says: "I believe I have fully met your requirements, and unless you send receipt for premium paid you will kindly return amount of $372.86.   Yours, E. Rasmusen."   This letter was received at the Milwaukee office in due course of mail, and on the 22d day of May Buckner transmitted it to the home office with a letter of his own in which he advised the company to accept the premium on the letter from Dr. Patrick already forwarded.   This last-named letter was received

at the home office May 24, 1893, and was immediately answered by a letter dated on that date, and received at the Milwaukee branch office May 26, 1893, in which the company say that they required a health certificate, and that, if this was explained to Mr. Rasmusen so that he understood it, they were sure there would be no trouble. · No letter was sent, either by the Milwaukee branch office or the home office, to Mr. Rasmusen after the receipt of his letter of May 18th, already mentioned; but on the 26th day of May, 1893, Candee wrote a letter to Dr. Patrick, stating the substance of the letter of the 24th inst. from the home office, inclosing a blank health certificate, and asking him if he could consistently fill in and sign a blank and return it. Dr. Patrick did not reply to this letter, and on the 30th day of May Rasmusen died, and the evidence tends to show that he died of consumption.

The case was tried by the court, jury being waived, and upon the foregoing facts the court held that the company had waived the forfeiture and reinstated the policy; and judgment for the plaintiffs was rendered upon the policy, from which the defendant has appealed.

For the appellant there was a brief by *F. W. Downer, Jr.*, and *Flandrau, Squires & Cutcheon*, and oral argument by *Geo. C. Squires*. They contended, *inter alia*, that there is no indication anywhere that the defendant intended to revive and renew this contract except after the medical examination had been made and the health certificate furnished. The minds of the parties did not meet, and there was concealment of material facts. The defendant was proceeding on the theory that it was negotiating with a person whose life could be insured, while that person was not only not insurable but must have known that he had but a short time to live. See *Ronald v. Mut. R. F. L. Asso.* 132 N. Y. 378; *Paine v. Pac. Mut. L. Ins. Co.* 2 C. C. A. 459; *Busby v. N. A. L. Ins. Co.* 40 Md. 572; *Harris v. Equitable L. Ass. Soc.*

3 Hun, 724, 730; *Kolgers v. Guardian L. Ins. Co.* 58 Barb. 185; *Catoir v. Am. L. Ins. & T. Co.* 33 N. J. Law, 487; *Pritchard v. M. & T. Mut. L. Ass. Soc.* 3 C. B. (N. S.), 622; *Finley v. Lycoming Co. Mut. Ins. Co.* 30 Pa. St. 311, 314; *Security Ins. Co. v. Fay,* 22 Mich. 467; *Allen v. Vt. Mut. F. Ins. Co.* 12 Vt. 366, 372; *Forbes v. Agawam Mut. F. Ins. Co.* 9 Cush. 470, 473; *Wheaton v. N. B. & M. Ins. Co.* 76 Cal. 415, 428; *Bennecke v. Ins. Co.* 105 U. S. 355; *Piedmont & A. L. Ins. Co. v. Ewing,* 92 id. 377, 381; *Insurance Co. v. Young's Adm'r,* 23 Wall. 85, 106. A waiver never occurs unless intended, or where the act ought in equity to estop the party from denying it. *Diehl v. Adams Co. Mut. Ins. Co.* 58 Pa. St. 443, 452; *Beatty v. Lycoming Co. Mut. Ins. Co.* 66 id. 9, 17; *Everett v. London Ins. Co.* 142 id. 332, 344; *Robertson v. Metropolitan L. Ins. Co.* 88 N. Y. 541, 545. "To establish a waiver of a forfeiture the proof must show a distinct recognition of the validity of the policy, after knowledge of the forfeiture by the person by whom it is claimed the forfeiture was waived." *Weed v. London & L. F. Ins. Co.* 116 N. Y. 106, 118.

For the respondents there was a brief by *Baker & Helms,* and oral argument by *E. W. Helms.* To the point that the conduct of the defendant amounted to a waiver of the forfeiture, they cited 2 May, Ins. § 507; Richards, Ins. § 63; Bliss, Life Ins. § 188; Wood, Fire Ins. §§ 87, 496; *Appleton I. Co. v. British Am. Ass. Co.* 46 Wis. 23, 33; *Webster v. Phœnix Ins. Co.* 36 id. 67, 72; *N. W. I. Co. v. Ætna Ins. Co.* 26 id. 78, 81; *Joliffe v. Madison M. Ins. Co.* 39 id. 111; *Erdmann v. Mut. Ins. Co.* 44 id. 376; *True v. Bankers' L. Asso.* 78 id. 287; *Rockwell v. Mut. L. Ins. Co.* 20 id. 335; *S. C.* 21 id. 548; *S. C.* 27 id. 372; *Titus v. Glens Falls Ins. Co.* 81 N. Y. 410, 419; *Prentice v. Knickerbocker L. Ins. Co.* 77 id. 483, 489; *Bailey v. Mut. B. Asso.* 71 Iowa, 689; *Tobin v. Western Mut. A. Soc.* 72 id. 261; *Viele v. Germania Ins. Co.* 26 id. 9, 54; *Phœnix Ins. Co. v. Lansing,* 15 Neb. 494,

Rasmusen and others vs. The New York Life Ins. Co.

497; *Potter v. O. & L. Mut. Ins. Co.* 5 Hill, 147, 150; *Georgia M. M. L. Ins. Co. v. Gibson,* 52 Ga. 640, 642; *Smith v. St. Paul F. & M. Ins. Co.* 3 Dak. 80, 83; *Benson v. Ottawa A. Ins. Co.* 42 U. C. Q. B. 282, 287; *Kelly v. St. Louis M. L. Ins. Co.* 3 Mo. App. 554, 558; *Sumerset Co. M. F. Ins. Co. v. May,* 2 Weekly Notes Cas. 43; *Moore v. N. Y. B. F. Ins. Co.* 29 N. Y. St. Rep. 768; *Insurance Co. v. Norton,* 96 U. S. 234; *Hanley v. Life Asso.* 69 Mo. 380; *Sheldon v. Atlantic F. & M. Ins. Co.* 26 N. Y. 460.

Winslow, J.   The insured failed to pay the premium due October 28, 1892.   He tendered it to the Wisconsin branch office May 3, 1893, with interest.   The money was received, placed to his credit, and the matter referred to the home office.   The home office replied, insisting on a medical examination; and this demand was communicated to Rasmusen by letter, May 15, 1893.   He replied May 18, 1893, substantially refusing to do anything further, and demanding that a receipt for the premium be sent him, or that his money be returned.   This letter was received by the Wisconsin branch office on or before May 22, 1893, and by the home office May 24, 1893; but the money was not returned, nor was any letter or communication of any kind sent to Rasmusen, either from the home office or the Wisconsin office.   Rasmusen died May 30, 1893.   The vital and controlling question in the case is whether the company has, by its conduct, waived the forfeiture resulting from the failure to pay the premium due October 28, 1892.

It is well established that upon default in payment of the premium the policy did not become absolutely void, but voidable only at the election of the insurer.   *Webster v. Phœnix Ins. Co.* 36 Wis. 67.   Being put to its election as to which course it would take when it received Rasmusen's money, it could not sleep upon its intention to avoid the policy, to the prejudice of the assured.   *Appleton Iron Co.*

*v. British Am. Ass. Co.* 46 Wis. 23. Two courses were open to it: It could declare the policy forfeited and return the money, or it could keep the money and reinstate the policy; but it could not keep the money and still insist on the forfeiture. Especially could it not do this after receiving Rasmusen's letter of the 18th of May, which was a distinct demand for a renewal receipt or a return of the money. The duty of making an election became then immediate and imperative. All the essential facts were understood. The company knew that an act of forfeiture had taken place; that the insured declined to submit to a medical examination; and that he had placed his money in their hands and demanded either reinstatement or the return of his money. These were all the facts which it was essential for them to know in order to act advisedly. It was not incumbent on the insured to state, in the absence of inquiry, the condition of his health. *Rockwell v. Mut. L. Ins. Co.* 27 Wis. 372.

The principle is familiar that if an insurance company receives and retains a premium, when it has knowledge of an act of forfeiture, until after a loss has occurred, it will effectually waive the forfeiture. So, in this case, if it had appeared without explanation that the insurance company silently retained Rasmusen's premium after the receipt of the letter of May 18th, demanding a renewal receipt or the return of the money, from May 24th until after May 30th, when Rasmusen died, we apprehend there could be no question in the mind of any one but that the company had elected to receive the money and reinstate the policy. Authorities are not needed to sustain this proposition. Now, suppose it had appeared that the officers of the company, while retaining the money, still did not intend to keep it absolutely, but only until they had explained to Rasmusen the kind of a health certificate necessary, and further that, though they had ample time to make such explanation, they never did so, but remained silent and allowed Rasmusen

to die with no knowledge of their philanthropic intention. Would the company's election to keep the money and reinstate the policy be any less decisive because of the concealed intention? We think not. The case last supposed is substantially the case before us. The company retained the money, as it now claims, for the purpose of giving Rasmusen an opportunity to procure a proper health certificate; but they kept their intention entirely to themselves and their physician at Hammond, and Rasmusen died without any reply to his peremptory letter of the 18th of May, and clearly entitled to believe that his money had been retained absolutely and his policy reinstated.

It is sometimes said that a waiver is a matter of intention, and does not occur unless intended. This is inaccurate, to say the least. Doubtless, the act out of which the waiver is deduced must be an intentional act, done with knowledge of the material facts, but it cannot be necessary that there should be an intent to waive. Such a rule would allow a secret intention to defeat the legal effect of unequivocal and deliberate acts. 2 May, Ins. (3d ed.), § 508. In the present case we think that by intentionally and in silence retaining the delayed premium after receipt of the letter of May 18th, until after Rasmusen's death, when there was ample time to have returned it or communicated its intention to Rasmusen before he died, the company must be held to have waived the act of forfeiture and reinstated the policy.

There are no other questions in the case which are of importance enough to demand discussion.

*By the Court.*— Judgment affirmed.