Heather R. Nugent, Plaintiff-Appellant,

Unity Health Plans Insurance Corporation, Involuntary-Plaintiff,

v.

Charles A. Slaght and American Family Mutual Insurance Company, Defendants-Respondents.

*No. 00–1432. Submitted on briefs December 13, 2000.—Decided November 8, 2001.*

2001 WI App 282

(Also reported in 638 N.W.2d 594.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Arthur E. Kurtz* and *Andrew J. Clarkowski* of *Axley Brynelson, LLP*, Madison.

On behalf of the defendant-respondent American Family Mutual Insurance Company, the cause was submitted on the brief of *Patricia J. Epstein* of *Peterson, Johnson & Murray, S.C.*, Madison.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J.    Heather Nugent appeals from a summary judgment in favor of American Family Mutual Insurance Company. Nugent was injured in a car accident caused by Charles Slaght and she sued Slaght and American Family. The circuit court granted

summary judgment, accepting American Family's argument that Slaght's policy had been cancelled prior to the accident and rejecting Nugent's waiver and equitable estoppel arguments.

¶ 2.  We hold that the circuit court erred in granting summary judgment in favor of American Family. We agree with the circuit court's conclusion that American Family did not waive its cancellation defense. However, it appears the circuit court erroneously assumed that the elements of equitable estoppel were not present. Accordingly, we reverse and remand with directions.

## I. Background

¶ 3.  Prior to July 16, 1996, Charles Slaght had a valid auto insurance policy with American Family Mutual Insurance Company. The last premium payment Slaght made was received by American Family on June 16, 1996, and was sufficient to pay for coverage until July 16, 1996.

¶ 4. · Slaght's auto insurance policy contained a provision specifying that the policy "may" be cancelled for nonpayment by mailing a notice of cancellation not less than ten days prior to the effective date of the cancellation. On June 27, 1996, American Family sent a notice to Slaght informing him that his policy "will be cancelled" on July 16, 1996, if his premium payment was not received by American Family by that date. We will assume for purposes of this decision that Slaght received the notice, but did not submit payment.[1]

---

[1] The record shows that American Family sent Slaght the cancellation notice by first class mail. There is no suggestion in the record that Slaght did not receive this notice. An affidavit signed by an American Family employee states that no payments were received from Slaght after the June 16 payment.

224

¶ 5. On July 19, 1996, Slaght caused a two-car collision in which Heather Nugent was injured. On July 22, 1996, an American Family employee made an entry in the company's record-keeping system cancelling Slaght's policy with an effective cancellation date of July 16, 1996. According to testimony from an American Family employee, it is the company's practice to delay entry of the cancellation into the company's record-keeping system in order to avoid recording a cancellation when a payment is received on time but not yet processed.

¶ 6. The American Family claims representatives assigned to handle the accident were not aware of the cancellation entry, apparently because the only check for cancellation they made was prior to the recording of the cancellation. A company employee testified that this failure was due to a flaw in American Family's internal procedures.

¶ 7. Nugent did not immediately file suit, but instead sought to obtain a settlement from Slaght and American Family. During a three-year period, from the time of the collision on July 19, 1996, and until it responded to Nugent's complaint on August 11, 1999, American Family acted as though Slaght had a valid policy in effect at the time of the collision. Among other things, American Family's claims representatives negotiated with Nugent, made payments to Nugent for property damage loss, made a settlement offer to Nugent, and reached a settlement with a passenger in Nugent's vehicle. American Family agrees that during this time period its claims representatives acted as though American Family was Slaght's insurer and that Nugent had no reason to suspect that Slaght's policy might not have been in effect at the time of the collision.

225

¶ 8. Nugent responded to American Family's actions by engaging in three years of negotiations and correspondence with American Family. She was interviewed by American Family representatives and responded to inquiries. She signed releases for confidential medical and employment records. She retained counsel and incurred the expense of filing suit. Finally, she did not pursue an uninsured motorist claim.[2]

¶ 9. The parties were unable to fully settle, and on June 22, 1999, Nugent filed suit. American Family responded to the lawsuit by taking steps to verify Slaght's coverage and discovered the basis for asserting cancellation.

¶ 10. American Family moved for summary judgment on the ground that Slaght's policy had been cancelled prior to the accident. Nugent moved for summary judgment in her favor on grounds of waiver and equitable estoppel. The circuit court granted summary judgment in favor of American Family, concluding that the company did not waive its cancellation defense because it did not relinquish a right "which it knew that it had." The circuit court also rejected Nugent's equitable estoppel argument, but the basis for that decision is unclear.

## II. Standard of Review

¶ 11. This court reviews summary judgment decisions *de novo,* applying the same standards as the trial court. *Smith v. Dodgeville Mut. Ins. Co.,* 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). A party is

---

[2] American Family informs us, and Nugent does not disagree, that Nugent has until July 19, 2002, to file a claim under her uninsured motorist policy.

entitled to summary judgment when there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

## III. Discussion

### *A. Waiver*

¶ 12.   Waiver is often defined as the "voluntary and intentional relinquishment of a known right." *E.g., Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 681, 273 N.W.2d 279 (1979); *Dussault v. Chrysler Corp.,* 229 Wis. 2d 296, 308, 600 N.W.2d 6 (Ct. App. 1999). However, "[t]his definition is misleading from the start . . . [because it] suggests that a waiver requires more purposefulness than the courts have generally required." David V. Snyder, *The Law of Contract and the Concept of Change: Public and Private Attempts to Regulate Modification, Waiver, and Estoppel,* 1999 WIS. L. REV. 607, 625. Indeed, waiver can occur when the waiving party does not intend to waive. *See Attoe v. State Farm Mut. Auto. Ins. Co.,* 36 Wis. 2d 539, 545, 153 N.W.2d 575 (1967) ("[I]t is not necessary to prove an actual intent to waive."); *Rasmusen v. New York Life Ins. Co.,* 91 Wis. 81, 89, 64 N.W. 301 (1895) ("Doubtless, the act out of which the waiver is deduced must be an intentional act, done with knowledge of the material facts, but it cannot be necessary that there should be an intent to waive.").

¶ 13.   Although the waiving party need not intend a waiver, he or she must act intentionally and with knowledge of the material facts. *State v. Mudgett,* 99 Wis. 2d 525, 530, 299 N.W.2d 621 (Ct. App. 1980); *Rasmusen,* 91 Wis. at 89. But here again, clarification is

227

needed because the "knowledge" requirement may be satisfied by actual or constructive knowledge. *Attoe*, 36 Wis. 2d at 546. "Constructive knowledge is knowledge which one has the opportunity to acquire by the exercise of ordinary care and diligence." WIS JI—CIVIL 3057 (1993); *see Attoe*, 36 Wis. 2d at 546.

¶ 14. Based on the foregoing principles, Nugent argues that American Family waived its right to raise its cancellation defense because it acted inconsistently with asserting this defense for nearly three years while possessing constructive knowledge of all material facts. Nugent contends that American Family claims representatives had only to review the records of their own company to discover the facts supporting the cancellation defense, but failed to do so because they did not exercise ordinary care and diligence.

¶ 15. American Family responds that its claims representatives acted under a "mistake of fact." American Family quotes the following phrases from 56 AM. JUR. *Waiver* § 14, at 114–15 (1947), which have been repeated several times in Wisconsin cases: "[i]gnorance of a material fact negatives waiver" and "[w]aiver cannot be established by a consent given under a mistake of fact." *See, e.g., Ryder v. State Farm Mut. Auto. Ins. Co.*, 51 Wis. 2d 318, 326, 187 N.W.2d 176 (1971). American Family does not, however, attempt to reconcile this language with case law saying that "constructive" knowledge is sufficient. Regardless, we find that the waiver issue here is governed by the *Ryder* decision, which includes a holding that the knowledge of an insurance company adjuster in that case should not be imputed to another insurance company employee for purposes of showing waiver of a policy defense.

¶ 16. The pertinent facts of *Ryder* are these. An insured party made material misrepresentations to

State Farm Insurance Company when applying for automobile insurance by failing to inform State Farm that he had several driving citations in recent years. *Id.* at 320–21. After State Farm issued a policy, the insured struck a pedestrian who eventually sued State Farm. Approximately two months after the accident, State Farm assigned an adjuster to investigate possible misrepresentation by the insured. The adjuster received "unconfirmed" information from the Milwaukee Police Department that the insured had several recent driving citations. Thereafter, a State Farm underwriting supervisor, unaware of the information from the Milwaukee Police Department, sent a memo to the insured's agent saying that State Farm would continue the insured's policy if he paid his renewal premium by the next renewal date. *Id.* at 320–23. The adjuster later received "official" information of the insured's misrepresentation and State Farm notified the insured that his policy had been "rescinded." *Id.* at 321–22.

¶ 17. In the context of the injured pedestrian's lawsuit, State Farm argued that it was not liable because the insured's policy had been rescinded. The pedestrian argued that State Farm waived its right to assert its policy defense by electing to renew the insured's policy. *Id.* at 325–26. One of the reasons the *Ryder* court gave for rejecting waiver applies here. The court found that even if State Farm's adjuster had information giving knowledge of the right to rescind the policy, its underwriting supervisor did not have the same information. *Id.* at 327. The *Ryder* court did not discuss constructive knowledge or the ease with which such information might have been shared within the State Farm organization. Instead, the court simply said: "the knowledge of one agent or employee is not imputed to another in these circumstances for the

229

purpose of showing an intent of the insurer to waive a policy defense." *Id*. In support, the *Ryder* court pointed to two cases which held that when an insurance company employee, with no knowledge of a decision to rescind, mistakenly accepts premium payments, such action does not constitute waiver. *Id*.at 327–28, citing *Ryan v. Rockford Ins. Co.*, 85 Wis. 573, 55 N.W. 1025 (1893), and *Reserve Life Ins. Co. v. Howell*, 357 P.2d 400 (Or. 1960).

■

¶ 18.  In keeping with *Ryder*, we hold that when the claims representatives acted without knowledge held by other employees of American Family, such action did not constitute a waiver of the cancellation defense. While we might reach a different conclusion if writing on a clean slate, we think the *Ryder* decision contains the general directive that waiver does not occur when one employee mistakenly takes action inconsistent with a policy defense because he or she does not have knowledge held by a different employee of the same company.[3]

---

[3] *Ryder* appears to be a departure from the general approach used when imputing knowledge to corporations. *See Suburban Motors of Grafton, Inc. v. Forester*, 134 Wis. 2d 183, 192, 396 N.W.2d 351 (Ct. App. 1986) (" 'corporation is charged with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation' ") (quoting 3 W. Fletcher, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 790 (rev. perm. ed. 1975)).

## B. Equitable Estoppel

¶ 19.   Equitable estoppel may be applied when the inaction or action of a party induces reliance by another to that other person's detriment. *Gonzalez v. Teskey,* 160 Wis. 2d 1, 12, 465 N.W.2d 525 (Ct. App. 1990). Nugent argues that American Family should be equitably estopped from asserting its cancellation defense because the company's actions induced Nugent to waste time and exert resources. American Family responds in two ways. First, the company argues that the doctrine of equitable estoppel is inapplicable to the type of policy defense involved in this case. Second, the company disputes whether Nugent suffered "detriment."

*1. Applicability of the doctrine of equitable estoppel to the type of cancellation defense asserted by American Family*

¶ 20.   American Family broadly asserts that equitable estoppel can never be used to resurrect an insurance policy that has been properly cancelled, regardless of actions subsequently taken by its employees. The company does not back up this assertion, but instead points to two cases that stand for a much more limited proposition. Both of these cases, *Ingalls v. Commercial Insurance Co.,* 18 Wis. 2d 233, 118 N.W.2d 178 (1962), and *Kamikawa v. Keskinen,* 44 Wis. 2d 705, 172 N.W.2d 24 (1969), involved non-employee insurance agents who (1) made representations to insurance customers inconsistent with information the customers had received from the insurance company, and (2) did so without authorization from the insurance company. Neither case sheds light on the situation presented here, where the basis of claimed equitable estoppel is the actions of the insurance company's own employees.

¶ 21. American Family next makes a similar but narrower argument based on case law holding that equitable estoppel may not be used to create coverage. The court in *Shannon v. Shannon*, 150 Wis. 2d 434, 442 N.W.2d 25 (1989), stated the following: "The general rule is well established that the doctrine of waiver or estoppel based upon the conduct or action of the insurer or its agent is not applicable to matters of coverage as distinguished from grounds for forfeiture." *Id.* at 450–51. In American Family's view, this language applies when a policy has been properly cancelled prior to an accident and a party seeks to use equitable estoppel to revive the policy because, American Family reasons, this revival creates new coverage. We disagree.

¶ 22. *Shannon* involved an insurance policy that excluded a relative of the insured from bodily injury coverage. While it was undisputed that policy language excluded the relative from this coverage, the relative argued that the insurance company waived its right to rely on the exclusion clause by acting inconsistently with such reliance for approximately eight months. *Id.* at 439, 450. The question in *Shannon* was not whether waiver or equitable estoppel could be applied when an insurance company acts inconsistently with its right to assert a cancellation or forfeiture defense. Instead, the question was whether waiver or equitable estoppel could be used to expand the scope of coverage under a policy. The *Shannon* court explained that these doctrines may not be used to create coverage that does not exist in the insurance policy. *Id.* at 453–54.

¶ 23. The fact that *Shannon* addressed the scope of coverage, and not forfeiture or cancellation situations, is apparent from language the court extensively

232

quoted from its prior decision in *Ahnapee & Western Railway Co. v. Challoner*, 34 Wis. 2d 134, 148 N.W.2d 646 (1967):

> [W]hile estoppel may be used to prevent an insurer from insisting upon conditions which result in forfeiture, estoppel has not been used in this state or in the majority of states as a means whereby the scope of coverage of an insurance policy can be expanded to include coverage which was not provided for or was excluded in the contract . . . .
>
> The rule that estoppel may apply to a forfeiture of benefits contracted for but cannot be successfully invoked to create a liability for benefits or coverage not contracted for was first laid down in this state in *McCoy v. Northwestern Mut. Relief Asso.* (1896), 92 Wis. 577, 66 N.W. 697 . . . .
>
> Estoppel rules have consistently been held by this court not to apply to extend coverage. . . This court [has] refused to apply waiver or estoppel to enlarge coverage . . . . This court [has] held neither waiver nor estoppel could be used to enlarge the coverage of the policy . . . .
>
> What terms, conditions and provisions in a policy may be considered as forfeiture clauses and what language is considered essentially coverage is not always free from doubt. We think neither the type of insurance policy nor the form of language in the policy necessarily controls the question. The coverage provisions of the policy must, of course, be distinguished from its liability provisions. *As a general rule, conditions and terms, either of an inclusionary or exclusionary nature in the policy, go to the scope of the coverage or delineate the risks assumed, as distinguished from conditions and terms which furnish a ground for the forfeiture of coverage or defeasance of liability . . . . 'While waiver and estoppel have been held applicable to*

*nearly every area in which an insurer may deny liabil-
ity, the courts of most jurisdictions agree that these
concepts are not available to broaden the coverage of a
policy so as to protect the insured against risks not
included therein or expressly excluded therefrom.* The
theory underlying this rule seems to be that the com-
pany should not be required by waiver and estoppel to
pay a loss for which it charged no premium, and the
principle has been announced in scores of cases involv-
ing almost every conceivable type of policy or coverage
provision thereof.'

. . .

What we have said applies both to waiver and
equitable estoppel or estoppel *in pais* in the traditional
sense in which those concepts are understood . . . .

*Shannon,* 150 Wis. 2d at 451–52, quoting *Ahnapee,* 34
Wis. 2d at 140–44 (emphasis added).

¶ 24.  American Family points to that part of the
above-quoted language which states:  "The theory un-
derlying this rule seems to be that the company should
not be required by waiver and estoppel to pay a loss for
which it charged no premium . . . ." However, in con-
text, it is apparent that neither *Shannon* nor *Ahnapee*
sets forth the general rule that an insurance company
cannot be forced to provide coverage whenever it did
not receive premium payment for the time period in
question. Moreover, such a rule would be directly at
odds with *Peterson v. Truck Insurance Exchange,* 65
Wis. 2d 542, 223 N.W.2d 579 (1974).

¶ 25.  The insurance policy at issue in *Peterson*
contained an "automatic lapse" clause providing that if
the insured failed to make a timely monthly premium
payment, the policy would automatically lapse and be
void at the end " 'of the monthly period for which the

234

premium had last been paid.'" *Id.* at 547 n.3. The insured in *Peterson* last made a monthly payment in September of 1971 and the policy should have automatically lapsed on October 18, 1971. The accident giving rise to the claim occurred three months later, on January 16, 1972. Despite a valid "automatic lapse" clause, the *Peterson* court held that the insurance company might have waived its right to rely on the lapse clause by acting inconsistently with that clause. *Id.* at 549–50. The matter was remanded for further fact finding and resolution. Notably, the *Peterson* court rejected nearly the same argument that American Family makes here:

> The insurance company cites *Madgett v. Monroe County Mut. Tornado Ins. Co.* (1970), 46 Wis. 2d 708, 176 N.W.2d 314, to the effect that an insurance policy cannot be created by estoppel if an insurance policy does not exist; that is true. However, *Madgett* is distinguishable from the instant case because there no contract of insurance ever existed between the plaintiff and the insurance company. It is our opinion that only a hearing can determine conclusively whether or not the insurance company in this case waived its right to have the policy lapse for nonpayment of premiums.

*Id.* at 550–51.

¶ 26.   Thus, cases holding that waiver and equitable estoppel cannot be used to create coverage have no application here.

¶ 27.   Finally, American Family argues that equitable estoppel should not be applied because the cancellation situation in this case is factually different from prior cases applying waiver and equitable estoppel to "automatic lapse" and "forfeiture" clause defenses. However, the company does not explain why the factual

differences it identifies matter.[4] For purposes of applying equitable estoppel, we perceive no relevant difference between "automatic lapse" clauses, "forfeiture" clauses, and the cancellation for nonpayment in this case. In all of these situations, an insurance company may, at its discretion, by action or inaction, enforce policy termination or, instead, act inconsistently with termination, thereby opening the door to the possible application of equitable estoppel. As stated in COUCH ON INSURANCE and quoted in *Peterson* with approval:   " 'A

---

[4] American Family says that *Webster v. Phoenix Insurance Co.*, 36 Wis. 67 (1874), is different because it involved a clause providing that if the insured purchased additional insurance for the insured's property from a company other than Phoenix without written consent from Phoenix, the policy would be void. The *Webster* court determined that Phoenix was estopped from relying on a "forfeiture" provision because, after a fire destroyed the property, Phoenix "required the [insured] to furnish plans and specifications of the insured house . . . [which the insured furnished] at a large expense," while at the same time knowing the insured had purchased additional insurance from a different company prior to the fire. *Id.* at 69–72. Similarly, American Family points to *Oshkosh Gas Light Co. v. Germania Fire Insurance Co.*, 71 Wis. 454, 37 N.W. 819 (1888). The policy in *Oshkosh* contained a forfeiture clause providing that the insurer could "void the policy" if there was a change to the property that increased the hazard without agreement of the insurer. The court held the forfeiture clause was waived because an adjuster with knowledge of an increased hazard ignored the forfeiture provision and negotiated with the insured. Finally, American Family says *Peterson v. Truck Insurance Exchange*, 65 Wis. 2d 542, 223 N.W.2d 579 (1974), is different because it involved an "automatic lapse" clause. In *Peterson*, an insured failed to make scheduled premium payments and the question on appeal was whether the insurance policy had lapsed due to nonpayment or if the policy should be deemed in effect due to waiver.

provision for forfeiture, lapse or suspension for nonpayment of premiums, assessments, dues, or notes therefor when due, is for the benefit of the insurer, so that a waiver may be effected, or an estoppel created [by conduct or words of an insurer]. . . .' " *Peterson*, 65 Wis. 2d at 549, quoting 6 George J. Couch, COUCH ON INSURANCE 2D § 32.263, at 496 (1961).

¶ 28.    Accordingly, we reject each of American Family's arguments offered in support of the proposition that equitable estoppel can never be used to bar defenses asserting policy cancellation prior to the event giving rise to potential liability.

*2. Application of equitable estoppel analysis to the facts in this case*

¶ 29.    We now address the application of the doctrine of equitable estoppel to the facts in this case. Equitable estoppel has four elements: "(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." *Milas v. Labor Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, 11–12, 571 N.W.2d 656 (1997). Proof must be clear, satisfactory, and convincing and must not rest on mere inference or conjecture. *Gonzalez*, 160 Wis. 2d at 13. "When the facts and reasonable inferences therefrom are not disputed, it is a question of law whether equitable estoppel has been established." *Milas*, 214 Wis. 2d at 8. This court determines questions of law independent of the circuit court. *Id.*

¶ 30. However, once the elements of equitable estoppel have been established as a matter of law, the decision to actually apply the doctrine to provide relief is a matter of discretion. *See Gonzalez*, 160 Wis. 2d at 13 ("The ultimate determination whether to apply estoppel is addressed to the trial court's discretion."); *accord Williams v. Kaerek Builders, Inc.*, 212 Wis. 2d 150, 162, 568 N.W.2d 313 (Ct. App. 1997); *Lohr v. Viney*, 174 Wis. 2d 468, 476, 497 N.W.2d 730 (Ct. App. 1993); *see also Hoefler v. Babbitt*, 139 F.3d 726, 727 (9th Cir. 1998); *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043 (Fed. Cir. 1992) ("[T]he trial court must, even where [the elements of equitable estoppel have been established], take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit."). In *Mulder v. Mittelstadt*, 120 Wis. 2d 103, 115–16, 352 N.W.2d 223 (Ct. App. 1984), this court explained:

> An appeal to equity requires a weighing of the factors or equities that affect the judgment—a function which requires the exercise of judicial discretion. "The basis of all equitable rules is the principle of discretionary application." *Yuba Consolidated Gold Fields v. Kilkeary*, 206 F.2d 884, 889 (1953) (footnote omitted).
>
> A trial court has the power to apply an equitable remedy as necessary to meet the needs of the particular case. *Prince v. Bryant*, 87 Wis. 2d 662, 674, 275 N.W.2d 676, 681 (1979).
>
>> [E]quity "has . . . never placed any limits to the remedies which it can grant, either with respect to their substance, their form, or their extent; but has always preserved the elements of flexibility and expansive-

238

> ness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case." 1 Pomeroy, Equity Jurisprudence, § 111. Equity has "power to enlarge the scope of the ordinary forms of relief, and even to contrive new ones adapted to new circumstances." *Ibid.* § 116. If the customary forms of relief do not fit the case, or a form of relief more equitable to the parties than those ordinarily applied can be devised, no reason is perceived why it may not be granted.

*Meyer v. Reif,* 217 Wis. 11, 20, 258 N.W. 391, 394 (1935).

¶ 31. The only element of equitable estoppel that American Family seriously disputes is detriment. "Detriment" in this context is equated with "prejudice" and means " 'injury or damage.' " *Milas,* 214 Wis. 2d at 13, quoting *City of Madison v. Lange,* 140 Wis. 2d 1, 7, 408 N.W.2d 763 (Ct. App. 1987). This injury or damage must be "actual and material or substantial, and not merely technical or formal." 28 Am. Jur. 2d *Estoppel and Waiver* § 83, at 508 (2000).

¶ 32. The circuit court held without explanation: "I do not think that the conduct of the insurance company rises to the level to support either waiver or estoppel." It appears the circuit court believed that the elements of estoppel are not present in this case. However, the undisputed facts show that Nugent suffered detriment. She engaged in three years of negotiations and correspondence with American Family. She was interviewed by American Family representatives and responded to inquiries. Nugent signed releases for confidential medical and employment records. She retained counsel and incurred the expense of filing suit. This detriment is not merely technical or formal.

239

¶ 33.  American Family argues that Nugent did not suffer detriment because she can still pursue her uninsured motorist claim and because that is the only relief she would have had available if American Family never made its mistake. However, we agree with Nugent that the decision in *Milas* shows that this factor, standing alone, does not negate detriment. In *Milas*, an employee participated in an arbitration process with his former employer for approximately a year before the employer asserted that arbitration was not available under the employee's contract. *Milas*, 214 Wis. 2d at 12. The employer apparently argued that the employee should have and still could pursue a remedy by filing an action in circuit court. *Id.* at 7, 13. The *Milas* court acknowledged this alternative, but held that the employee suffered detriment by having to "invest time and resources" in the arbitration process. *Id.* at 13.

¶ 34.  American Family also suggests that Nugent is better off than she would have been had American Family not made its mistake. American Family points out that it paid Nugent $9600 for property damage. American Family asserts that the money it paid to Nugent's passenger would have come out of Nugent's uninsured motorist coverage payments. We conclude that these arguments do not address the existence of the element of detriment, but are better directed at whether the circuit court should exercise its discretion to actually apply estoppel to bar the cancellation defense. Moreover, we cannot tell from the record or briefs before us whether these are actual benefits to Nugent. It may be that if Nugent is forced to pursue uninsured motorist coverage, American Family will seek to recover payments made, or that the company providing

Nugent's uninsured motorist coverage will seek to set off prior payments by American Family against its own liability.

¶ 35. Accordingly, we hold that the elements of equitable estoppel have been established in this case. We remand on the separate question of whether the doctrine should actually be applied to bar American Family's cancellation defense because it does not appear that the circuit court exercised its discretion in this respect and we may not exercise discretion for the circuit court.

¶ 36. We acknowledge that our supreme court has, on at least one occasion, seemingly exercised discretion in deciding whether to apply equitable estoppel after it determined as a matter of law that all of the elements of estoppel were present. *E.g., Milas*, 214 Wis. 2d at 13–15. However, we believe this approach is contrary to the supreme court's general directive that appellate courts not apply discretionary tests in the circuit court's stead. *See, e.g., Wisconsin Ass'n of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 434–35, 293 N.W.2d 540 (1980) (discretionary decision to issue an injunction); *King v. King*, 224 Wis. 2d 235, 254, 590 N.W.2d 480 (1999) (discretionary decision to award maintenance to a former spouse). Furthermore, we do not believe that the undisputed facts are sufficiently developed to enable us to make the policy decision whether to apply equitable estoppel.

*By the Court.*—Judgment reversed and cause remanded with directions.