COURT OF APPEALS
DECISION
DATED AND FILED

December 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP2256**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV19

IN COURT OF APPEALS
DISTRICT IV

PHARMACISTS MUTUAL INSURANCE COMPANY,

   PLAINTIFF-APPELLANT,

 V.

ST. SOMEWHERE INC. AND

HASTINGS MUTUAL INSURANCE COMPANY,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Rock County: ASHLEY J. MORSE, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM.　Pharmacists Mutual Insurance Company appeals an order dismissing its complaint against St. Somewhere, Inc., and its insurer Hastings Mutual Insurance Company.　The issue is whether the circuit court properly granted the defendants' summary judgment motion and rejected Pharmacists Mutual's equitable estoppel argument against the defendants' statute of limitations defense.　We conclude that no reasonable fact-finder could find that Pharmacists Mutual reasonably relied on the defendants' claimed inaction, and therefore we affirm the dismissal of the complaint based on the statute of limitations defense.

## I. BACKGROUND

¶2　For purposes of this appeal, it is not necessary to fully recount the factual allegations of the case or the involvement of all parties.　The case arises from a car accident.　A person injured in the accident was driving for an employer at the time, and plaintiff Pharmacists Mutual is the employer's insurer, suing under its subrogation right.　The alleged tortfeasor is defendant Arik Grefsheim. Pharmacists Mutual alleged that, at the time of the accident, Grefsheim was driving for his employer, St. Somewhere, doing business as Badgerland Properties. Hastings Mutual is Badgerland's insurer.　Badgerland and Hastings Mutual moved for summary judgment on a statute of limitations theory.　The circuit court granted the motion and dismissed the complaint as to these defendants.

¶3　This court reviews a grant of summary judgment de novo, using the same methodology used by the circuit court.　***Bank of New York Mellon v. Klomsten***, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364.　That methodology is well established and need not be repeated in full here.　However, we emphasize that we must draw all reasonable factual inferences in favor of the

non-moving party. *H&R Block Eastern Enterprises, Inc. v. Swenson*, 2008 WI App 3, ¶11, 307 Wis. 2d 390, 745 N.W.2d 421 (2007).

¶4 On appeal, Pharmacists Mutual argues that summary judgment is improper because a reasonable fact-finder could find that the defendants are equitably estopped from asserting a statute of limitations defense. The argument rests on the proposition that, at the time of the accident, and continuing after the accident, tortfeasor Grefsheim and his employer, Badgerland, did not inform law enforcement or anyone involved that Grefsheim had been driving in the course of his employment at the time of the accident, or else affirmatively lied on this topic. Pharmacists Mutual contends that, because of Grefsheim and Badgerland's alleged silence or untruthfulness on this topic, Pharmacists Mutual was unaware of a potential claim against Badgerland and its insurer based on respondeat superior. As a result, the argument proceeds, Pharmacists Mutual did not sue Grefsheim until shortly before the expiration of the statute of limitations, and it was only after that deadline that Grefsheim informed Pharmacists Mutual that he was driving in the course of his employment at the time of the accident.

¶5 The parties agree on the elements of equitable estoppel. They are: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; and (4) which is to the other's detriment. *Nugent v. Slaght*, 2001 WI App 282, ¶29, 249 Wis. 2d 220, 638 N.W.2d 594. Pharmacists Mutual argues that a reasonable fact-finder could find in its favor on these elements. We assume, for purposes of this opinion, that whether the historical facts satisfy these elements is an issue to be resolved by the fact-finder, although there is at least some case law suggesting that this is actually a legal issue. *See, e.g.*, *id.*

## II. THE NATURE OF THE CLAIMED INEQUITABLE INACTION

¶6    Our decision in this appeal ultimately rests on whether Pharmacists Mutual can show that it reasonably relied on an asserted lack of disclosure or false statement by the defendants. But we first discuss the inaction or falsehood by Grefsheim and Badgerland that is claimed to have been inequitable. We do so because, to determine whether Pharmacists Mutual reasonably relied on the defendants' inaction or falsehood, we must have a clear idea of what that inaction or falsehood could have consisted of. Phrased in summary judgment terms, we must consider what a reasonable fact-finder could find the defendants' action or inaction to have been, considering the evidence in the light most favorable to Pharmacists Mutual.

¶7    In its opening brief on appeal, Pharmacists Mutual states that "Grefsheim never disclosed to law enforcement that he was in the course and scope of employment," [app br at 10] and that Badgerland "never told law enforcement … that Grefsheim was in the course and scope of his employment." The brief makes these assertions appear to be undisputed facts, but the brief contains no citations to the record to support these factual assertions.

¶8    Pharmacists Mutual acknowledges that, in deposition testimony, both Grefsheim and a Badgerland representative who was at the accident scene said they did not recall whether they spoke to law enforcement. No inference can be drawn from this evidence as to what they did or did not tell law enforcement.

¶9    It appears from the briefing that Pharmacists Mutual expects us to infer from the motor vehicle crash report prepared by the sheriff's department that Grefsheim and Badgerland shared no information with law enforcement on the topic of whether Grefsheim was working for an employer at the time of the

accident. However, Pharmacists Mutual does not initially explain why this report supports a reasonable inference that they were silent on that topic. The report form does not appear to contain a field to record whether a motorist was driving in the course of employment, and therefore the mere absence of that information from the report does not support any inference about what was, or was not, said to law enforcement on this topic.

¶10 Pharmacists Mutual observes that the form shows that law enforcement believed Grefsheim had no insurance, and that he was cited for that deficiency. Pharmacists Mutual may be suggesting that it could be inferred from this that, if Grefsheim had told law enforcement that he was driving in the course of his employment, the crash report would show that he was insured and he would not have been cited. However, this does not appear to be a reasonable inference, for the following reason.

¶11 The report shows that Grefsheim was driving his own vehicle. He was cited for operating a motor vehicle on which the owner or operator did not have in effect a liability policy "with respect to the vehicle being operated," to quote the statute. *See* WIS. STAT. § 344.62(1) (2023-24).[1] Even if Grefsheim had mentioned his employment, which might result in potential employer liability under respondeat superior, there is no reason to think that the potential indemnification of that liability by the employer's insurer would qualify as insurance *of Grefsheim's personal vehicle*. Thus, Grefsheim's driving in the course of his employment would not cure his violation of § 344.62(1) for operating his vehicle without carrying an insurance policy on that vehicle. As a

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

result, this portion of the form, and the citation of Grefsheim, do not support any reasonable inference that Grefsheim was silent or lied about his employment status to law enforcement.

¶12    In its reply brief, Pharmacists Mutual appears to imply that a reasonable inference can be drawn, from a different part of the form, that law enforcement *asked* Grefsheim if he was driving for an employer, and that he said he was not.  This argument is based on the observation that, in referring to the injured driver of the other vehicle, the crash report identifies the insurance company of his employer, rather than identifying the injured driver's own personal insurance.  Pharmacists Mutual suggests that this allows an inference that law enforcement asked the injured driver about his employment, or was otherwise interested in obtaining that information, and, therefore, they probably did the same with Grefsheim.  Pharmacists Mutual goes so far as to state as fact that Badgerland, through its employees, "provided inaccurate and incomplete information to law enforcement about insurance available to satisfy damages caused by Grefsheim," and that Badgerland "led law enforcement to believe that no insurance would satisfy damages caused by Grefsheim's negligence."

¶13    However, we conclude that this portion of the form again fails to provide any reasonable basis to infer what information Badgerland's employees or other representatives did or did not provide, or what law enforcement believed, on this topic.  It does not provide that basis for at least two reasons.

¶14    One reason is that the injured driver's vehicle displayed a company logo.  This would have made the employment nature of the driving readily observable, without the need to ask its driver.

¶15     The other reason is even more significant.  The crash report shows that the vehicle driven by the injured driver was owned by a corporation.  This would have raised the issue of the insurance status of the company-owned vehicle and the crash report records what the form suggests is the owner's insurer, Pharmacists Mutual.  In its reply brief, Pharmacists Mutual describes the report as identifying it "as [the injured driver's] insurer," but the form does not actually connect Pharmacists Mutual with the driver, only with the corporate owner of the vehicle.  As with Grefsheim and his vehicle, the crash report is focused on the insurance status of the vehicle, not the employment status of the driver.

¶16     For these reasons, no reasonable inference can be drawn from the fact that the report identifies the insurance company of the vehicle's corporate owner that law enforcement asked Grefsheim about his employment status, or that law enforcement formed any belief about what insurance might ultimately be available in connection with Grefsheim's employer.

¶17     In sum, Pharmacists Mutual has not cited to any evidence from which a fact-finder could reasonably infer that Grefsheim and Badgerland were silent or gave false information at the scene of the accident or to law enforcement about Grefsheim's employment status.  Without that inference of historical fact, Pharmacists Mutual must show that it reasonably relied on *other* inaction by them.

¶18     The remaining inaction that Pharmacists Mutual claims to have relied on appears to have two parts.  One is that, following the accident, Grefsheim and Badgerland did not, on their own initiative, provide the information about Grefsheim's employment status to anyone such as the injured driver, his employer, or Pharmacists Mutual.  The other inaction is that Grefsheim did not respond to three subrogation letters sent to him by Pharmacists Mutual, although Pharmacists

7

Mutual acknowledges that one of those letters was returned as undeliverable and was therefore not seen by Grefsheim. Pharmacists Mutual averred that these letters were sent in March through June 2018, between approximately two and four months after the accident. We now address these two forms of inaction in the context of the reasonable reliance issue.

### III. REASONABLE RELIANCE ON THE INACTION

¶19 We will refer to Grefsheim and Badgerland collectively as Badgerland for the rest of this discussion. For purposes of this element, we assume, without deciding, that a fact-finder could reasonably find that Pharmacists Mutual actually relied on these two forms of inaction by Badgerland to wait to file suit for nearly three years, until January 2021, when the statute of limitations had nearly expired. We focus instead on whether a fact-finder could find that such reliance was reasonable.

¶20 Pharmacists Mutual directs us to an opinion which it argues stands for the proposition that silence can reasonably be relied on, *Wosinski v. Advance Cast Stone Co.*, 2017 WI App 51, ¶¶42-43, 377 Wis. 2d 596, 901 N.W.2d 797. But in *Wosinski* there was a contractual relationship between the parties that required disclosure and supported a conclusion that reliance on silence was reasonable, and this relationship appears pertinent to the court's analysis. *See id.* Here, Pharmacists Mutual does not identify any similar relationship or legal duty between itself and Badgerland.

¶21 Pharmacists Mutual's reply brief suggests that Badgerland had a legal duty to inform law enforcement after the accident that he was driving for his employer. If that affirmative legal duty existed, Pharmacists Mutual might reasonably have relied on Badgerland to have complied with the law, and thus be

able to construe its silence to law enforcement as meaning that no employment was involved. However, even if that affirmative duty did exist, here there was still no basis for Pharmacists Mutual to reasonably believe that Badgerland did not provide this information to law enforcement. As we previously discussed, the crash report form did not call for information about a driver's employment, and Pharmacists Mutual does not provide us with any other reasonable basis to infer from the report that Badgerland did not provide this information to law enforcement. In other words, Pharmacists Mutual could not reasonably rely on the absence of relevant references in the report, because even if Badgerland had complied with an assumed affirmative duty to tell law enforcement, the report might still be silent as to a driver's employment. The report did not purport to be a source of information on the employment topic.

¶22    Beyond this, Pharmacists Mutual does not clearly explain why it could reasonably expect disclosure by Badgerland. In this context, the question that Pharmacists Mutual must answer is this: Why was it reasonable for Pharmacists Mutual to rely on Badgerland to voluntarily disclose this information to anyone in a way that would have reached Pharmacists Mutual, whether on Badgerland's own initiative or in response to a subrogation letter? This reliance would be reasonable only if Pharmacists Mutual had a reasonable basis to expect that such disclosure would occur. Pharmacists Mutual does not identify any such basis, other than the claimed duty to law enforcement discussed above.

¶23    Instead, Pharmacists Mutual focuses on other aspects of its decision to delay filing suit. It argues that it took reasonable steps to investigate, and that the other information available to it gave no indication to suspect that Grefsheim might have been driving for an employer. Pharmacists Mutual also argues that its

9

delay in filing suit was reasonable for the purpose of allowing full assessment of the extent of its insured's damages.

¶24 These arguments do not show that Pharmacists Mutual reasonably relied on inaction by Badgerland. Assuming that Pharmacists Mutual made a reasonable, but unsuccessful, effort to investigate, that would not mean that it reasonably relied on the inaction by Badgerland when it delayed. Reasonableness of an investigation is not the same as reasonable reliance on another's inaction. Similarly, waiting for damages to become clear was not a decision based on inaction by Badgerland. Indeed, instead of showing reasonable reliance on inaction by Badgerland, these arguments imply that Pharmacists Mutual did not actually rely on inaction by Badgerland, but it relied on considerations unrelated to Badgerland's inactions.

¶25 For these reasons, we conclude that a reasonable fact-finder could not find that Pharmacists Mutual reasonably relied on inaction by Badgerland when it delayed filing suit. Therefore, equitable estoppel does not apply, and the circuit court properly dismissed the claims against Badgerland and Hastings Mutual because the claims lapsed at the end of the statute of limitations period.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.