RYDER, Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant: ROBERTSON, Defendant.

*No. 74. Argued May 3, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 176.)

For the appellant there were briefs by *Kivett & Kasdorf*, attorneys, and *Nonald J. Lewis* and *Conrad G. Goodkind* of counsel, all of Milwaukee, and oral argument by *Mr. Goodkind*.

For the respondent there was a brief by *Gerald J. Bloch* and *Phillips, Hoffman & Bloch*, all of Milwaukee, and oral argument by *Gerald J. Bloch*.

CONNOR T. HANSEN, J.   A trial on the issue of coverage was held. The jury found that the defendant had made a material misrepresentation in applying for insurance. This finding is not disputed on appeal. However, the trial court found that State Farm was "estopped from raising its policy defense on the grounds of laches and by virtue of its conduct in not taking timely affirmative action to cancel the policy after learning of the facts surrounding misrepresentation."

Therefore, the facts surrounding the misrepresentation and the action of State Farm upon learning of the misrepresentation became important.

On September 8, 1962, the defendant made application to State Farm for automobile liability insurance. In the application, he represented that neither he nor any member of his household had had a driver's license or registration suspended within five years preceding the date of the application. Defendant also represented that neither he nor any member of his household had had any driving citations within the last three years.

November 17, 1962, the plaintiff-respondent, Henry Earl Ryder (hereinafter plaintiff) a pedestrian, was struck by an automobile driven by the defendant. Sub-

sequent to the accident, State Farm received information that title to the car the defendant was driving was in Mrs. Robertson's name and that she was not living with the defendant at the time of the accident. Therefore, on January 14, 1963, State Farm assigned an adjuster to the case to investigate a possible misrepresentation. The adjuster learned that the defendant may have made a material misrepresentation in applying for insurance when he, the adjuster, received unconfirmed information by telephone from the Milwaukee police department that both the defendant and his wife had had several driving citations in recent years.

As a result of receiving this information, on February 8, 1963, the adjuster wrote to the department of motor vehicles to obtain an official report of the defendant's driving record. This was received February 27, 1963. The report reflected that the defendant's registration had been suspended on May 28, 1962, and that Mrs. Robertson's driving privileges had been suspended on the same day. The report also reflected that both defendant and his wife had had a number of driving citations in the past three years.

On March 6, 1963, the adjuster received a statement from the defendant and from the agent who accepted the application for insurance, and forwarded the results of his investigation to State Farm's Milwaukee claims supervisor. The claims supervisor prepared a report for the Milwaukee claims committee discussing the question of coverage and recommending rescission of the policy. The claims committee met on March 12, 1963, and rendered an advisory decision recommending rescission. This recommendation was forwarded to State Farm's general claims committee at its home office in Bloomington, Illinois, and the general claims committee also recommended rescission of the insurance contract.

March 19, 1963, the defendant was notified that his policy had been rescinded because of material misrepre-

sentations made by him in his application. The policy premium was refunded in full.

The instant action was commenced by the plaintiff on March 6, 1963, by service of a summons and complaint. State Farm's answer was filed on March 26, 1963, and included an affirmative defense alleging that no coverage existed because of the misrepresentation made by defendant in the application for the policy.

A factor which apparently influenced the decision of the trial judge was the action of State Farm in regard to renewal of defendant's insurance contract. There is a decided difference between the obligation of an insurer in regard to renewal of an insurance contract, as compared with a decision on rescission of a previously issued insurance contract.

The defendant's policy was issued and effective as of September 28, 1962. His renewal premium on the policy was due March 28, 1963. The underwriting department of State Farm knew of the November 17, 1962 accident (the basis for the present litigation) and another reported accident in December, 1962.

On February 25, 1963, and prior to the time State Farm had received official confirmation of the facts surrounding the defendant's driving record, the underwriting supervisor for State Farm sent the agent, who had accepted the defendant's application, the following memo regarding the renewal of defendant's policy:

"Renewal Date—March 28, 1963.

"In re-underwriting this risk, we find it no longer meets our standards. A 'drop' at renewal date letter will be sent to the insured about 50 days prior to the next renewal date.

"The next renewal date is less than 45 days away. If the insured pays his renewal on or before the current renewal due date, the policy will be continued until the next normal expiration date and the 'drop' won't be sent until then. If the insured does not pay on or before the current renewal date, a non-payment cancellation letter will be sent and any late payment returned.

"Not acceptable as a Standard Risk. Please do not solicit added sections, accept additional vehicles, or encourage premium payment."

This memo was written before State Farm had received the official report confirming the defendant's record and before it had rescinded the contract of insurance previously issued. Also, except for the November and December accidents, the underwriting supervisor had no information concerning the defendant's driving record.

*Estoppel.*

An estoppel arises where it would be inequitable to permit the insurer to raise a policy defense. Estoppel depends upon a prejudicial change of position by the insured or by an injured third party. 16A Appleman, *Insurance Law and Practice*, pp. 280, 281, sec. 9081.

" ' " . . . An estoppel *in pais* consists of action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. *Dixon v. Davidson* (1930), 202 Wis. 19, 231 N. W. 276; *Callaway v. Evanson* (1956), 272 Wis. 251, 75 N. W. (2d) 456; *Eau Claire Dells Improvement Co. v. Eau Claire, supra.* ' '
"The equitable doctrine of laches is a recognition that a party ought not to be heard when he has not asserted his right for unreasonable length of time or that he was lacking in diligence in discovering and asserting his right in such a manner so as to place the other party at a disadvantage." *Bade v. Badger Mut. Ins. Co.* (1966), 31 Wis. 2d 38, 46, 47, 142 N. W. 2d 218.

No assertion is made that State Farm is estopped to assert a policy defense because it failed to use reasonable diligence in discovering a fraud. *See Bade v. Badger Mut. Ins. Co., supra.* The conduct relied on by the trial court to establish an estoppel on the ground of laches was the unreasonable delay of State Farm in rescinding

the policy, after it first received information concerning a possible misrepresentation. State Farm, however, contends that the information it first received was unofficial and unconfirmed hearsay information and was not sufficient to warrant rescission. The information concerning recent driving citations was received by a telephone conversation with an unidentified person in the Milwaukee police department. The first official information received concerning the misrepresentation was that contained in the letter State Farm received from the motor vehicle department on February 27, 1963.

An insurer cannot unreasonably delay manifesting to its insured, or to an injured third party, that it intends to assert a policy defense. 5 Cooley, *Briefs on Insurance* (2d ed.), p. 4290. *Travelers Indemnity Co. v. Harris* (D. C. Mo. 1961), 216 Fed. Supp. 420, 423. However, State Farm contends that an insurer should rescind a policy only for good cause and after serious consideration; and that the procedures it followed after receiving official information concerning the misrepresentation were necessary and reasonable safeguards and did not result in an unreasonable delay.

". . . The cancellation of a policy for misrepresentation is a serious matter, both to the company and to the insured; and, although good faith requires that the company act promptly upon discovering the falsity of a representation, it is entitled to a reasonable time within which to investigate the matter and to determine what course to pursue." *Fountain & Herrington v. Mutual Life Ins. Co.* (4th Cir. 1932), 55 Fed. 2d 120, 125, 126.

What amounts to an unreasonable delay depends upon the circumstances of the particular case. *Travelers Indemnity Co. v. Harris, supra.* In this case there was a delay of approximately two and one-half weeks between the time State Farm received official information concerning the misrepresentation and the time it rescinded the policy, and a delay of approximately six weeks be-

tween the time it first had reason to believe a misrepresentation had been made and the time it rescinded the policy.

Moreover, an estoppel cannot arise in the absence of proof that the party claiming the benefit thereof has relied on the conduct claimed to give rise to the estoppel, to his prejudice. 18 Couch, *Insurance* (2d ed.), pp. 17, 18, sec. 71.17; pp. 19, 20, sec. 71.19. In this case there was no proof that the insured or injured party were led to believe that State Farm would not allege a policy defense. The accident occurred in November, 1962, several months before the conduct of the insurer alleged to give rise to the estoppel. The complaint was served on March 6, 1963. The answer was filed within twenty days, on March 26, 1963, and in that answer State Farm alleged its policy defense based on misrepresentation of the insured. There was no showing that the premium renewal notice caused the defendant to believe that State Farm would not assert a policy defense. There is nothing to indicate that the plaintiff was even aware of the premium renewal notice. Furthermore, in this case there was no showing that either defendant or plaintiff took any action, or refrained from any action, or incurred any expense, to their detriment, relying on the belief that the policy defense would not be asserted. *See Unsatisfied Claim & Judgment Fund Board v. Bar Harbor Ins. Agency, Inc.* (4th Cir. 1970), 422 Fed. 2d 396.

Under the facts of this case and considering the serious consequences of the decision to rescind, both to the insurer and the defendant, we conclude that State Farm acted within a reasonable time and that there has been no showing of prejudice or reliance. Therefore, State Farm is not estopped from asserting its policy defense.

### *Waiver.*

Plaintiff contends that even if State Farm is not estopped to assert the policy defense, it waived its right to

assert that defense by electing to renew defendant's policy. However, waiver requires an intentional relinquishment of a known right.

" 'Waiver' is the voluntary, intentional relinquishment of a known right. Such waiver may result from either affirmative acts of the insurer or its authorized representatives, or its nonaction with knowledge of the facts. . . . The circumstances must indicate that the relinquishment is intended by the insurer, and the insurer must have full knowledge of all facts pertaining thereto." 16A Appleman, *Insurance Law and Practice*, pp. 279, 280, sec. 9081.

" ' "Waiver" is defined as voluntary and intentional relinquishment of a known right. As said in *Nolop v. Spettel* (1954), 267 Wis. 245, 249, 64 N. W. (2d) 859:

" ' "A waiver is the intentional relinquishment of a known right." *Swedish American Nat. Bank v. Koebernick*, 136 Wis. 473, 479, 117 N. W. 1020. "Since an intention to relinquish an existing right or advantage is generally regarded as an essential of a waiver, it follows that it must be shown by the party claiming a waiver that the person against whom the waiver is asserted had at the time knowledge, actual or constructive, of the existence of his rights or of the facts upon which they depended. Ignorance of a material fact negatives a waiver. Waiver cannot be established by a consent given under a mistake of fact." 56 Am. Jur., Waiver, p. 114, sec. 14. *Davies v. J. D. Wilson Co.* (1957), 1 Wis. (2d) 443, 466, 467, 85 N. W. (2d) 459.' " *Bade v. Badger Mut. Ins. Co.*, *supra*, p. 46.

At the time the memo regarding renewal of defendant's policy was written, State Farm did not have full knowledge of the facts concerning its right to rescind defendant's policy. Collection of premiums during the time a breach of the policy by the insured is being investigated has been held not to constitute a waiver of the right to rescind. *Sloop v. Mutual of Omaha Ins. Co.*

(1965), 55 Tenn. App. 656, 404 S. W. 2d 265; *Klim v. Johnson* (1958), 16 Ill. App. 2d 484, 148 N. E. 2d 828.

Even if the unofficial information received from the Milwaukee police department sometime prior to February 8, 1963, was to be considered sufficient information to give State Farm knowledge of its right to rescind the policy, the underwriting supervisor who determined to renew Robertson's policy did not have this information. Plaintiff contends, however, that the knowledge of the adjuster is imputable to State Farm. Knowledge of an agent is imputed to the insurer in some circumstances, *e.g.,* where the agent has knowledge of the true facts when the application is made. 16A Appleman, *Insurance Law and Practice,* p. 351, sec. 9101; *Renier v. Dwelling House Ins. Co.* (1889), 74 Wis. 89, 42 N. W. 208; *Arneberg v. Continental Casualty Co.* (1922), 178 Wis. 428, 190 N. W. 97. However, the knowledge of one agent or employee is not imputed to another in these circumstances for the purpose of showing an intent of the insurer to waive a policy defense.

In *Ryan v. Rockford Ins. Co.* (1893), 85 Wis. 573, 55 N. W. 1025, this court held the collection of premiums by an employee of the company without knowledge the policy had been rescinded did not constitute a waiver of the policy defense.

". . . Under date of October 4, 1888, the company notified plaintiff by letter that it denied all liability on the policy, and at the same time returned to him his proofs of loss. In November 1888, a clerk of the company, in the usual course of the business of the office in which he was employed, but without the direction or knowledge of any responsible officer or agent of the company, sent plaintiff a notice that his premium note for $16.35 would become due December 1, 1888, and asking him to remit the amount before November 20th, and authorizing him, if he did so, to retain twenty-five cents. After November 20th plaintiff remitted the amount of his note to the company. The company by its officers at once offered to return such money to plaintiff, and notified his at-

torneys of the fact and where the money was deposited subject to the plaintiff's or their order. Plaintiff has not accepted the money thus offered to be returned to him. The testimony clearly shows that the sending of such notice was a pure mistake, made by one having no sufficient knowledge of the facts; that it was entirely unauthorized by any person having authority to bind the company; and that it was repudiated by the company, and the money thus sent by plaintiff was at once tendered to him after the mistake was discovered, and before the plaintiff could possibly have been prejudiced thereby.

"In the foregoing transactions we find no element of an estoppel or any valid waiver by the insurance company of its defense to the policy. . . ." *Ryan v. Rockford Ins. Co., supra,* page 578.

Similarly, in *Reserve Life Ins. Co. v. Howell* (1960), 225 Or. 71, 357 Pac. 2d 400, a waiver was not implied where the insurer's employee with no knowledge of the decision to rescind, through some clerical error, sent notice of and collected premiums for a period of ten months. The court held that waiver required a voluntary intentional relinquishment of a known right and that the requisite intent could not be established where payment of premiums were accepted through negligence or mistake and thereafter returned when the mistake was discovered. In the instant case, it does not appear that the renewal premiums were paid.

Under the facts of this case, the decision of an underwriting agent in regard to renewal of the insurance contract without knowledge of the facts, giving rise to a right to rescind the policy on the ground of misrepresentation, does not constitute a waiver of the right to rescind.

*By the Court.*—Order reversed.