ADMIRAL INSURANCE COMPANY,
Plaintiff-Appellant-Petitioner,

v.

PAPER CONVERTING MACHINE COMPANY (PCMC),
Defendant-Respondent,

CHUBB CUSTOM INSURANCE COMPANY,
Defendant-Co-Appellant-Petitioner.

Supreme Court

*No. 2009AP2099. Oral argument January 13, 2012.
—Decided March 27, 2012.*

2012 WI 30

(Also reported in 811 N.W.2d 351.)

292

For the plaintiff-appellant-petitioner there were briefs filed by *Ward I. Richter, Sheila M. Sullivan* and *Bell, Moore & Richter, S.C.*, Madison and oral argument by *Sheila M. Sullivan.*

For the defendant-co-appellant-petitioner there were briefs filed by *Robert S. Soderstrom, Todd S. Schenk, Nicolas C. Mesco* and *Tressler LLP,* Chicago, and oral argument by *Todd S. Schenk.*

For the defendant-respondent there was a brief filed by *Dudley W. Von Holt, Matthew S. Darrough* and *Thompson Coburn LLP,* St. Louis, *Gregory B. Conway, April Baker* and *Liebmann, Conway, Olejniczak & Jerry, S.C.* Green Bay and oral argument by *Dudley W. Von Holt.*

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Admiral Insurance Company and Chubb Custom Insurance Company (hereinafter Admiral), seek review of unpublished orders of the court of appeals, which dismissed as untimely Admiral's appeal of a grant of

summary judgment in favor of Paper Converting Machine Company (PCMC).[1] In the event that we conclude that the appeal was timely and reverse the court of appeals, Admiral also asks us to review the circuit court's grant of summary judgment in favor of PCMC.

¶ 2. The court of appeals dismissed Admiral's appeal as untimely because it concluded that the circuit court's March 26, 2009 decision and order was the final order for purposes of appeal. Admiral argues that the March 26 decision and order was not a final order because it did not dispose of the entire matter in litigation, and it notes that the order did not contain a statement of finality. Admiral contends that the judgment entered on July 8, 2009, was final for purposes of appeal, and that it timely appealed from that judgment.

¶ 3. If we conclude that there is any ambiguity in an order or judgment about whether it disposes of the entire matter in litigation as to one or more of the parties, we will construe the ambiguity so as to preserve the right to appeal. Under these circumstances, although the March 26 order arguably disposed of the entire matter in litigation between the parties, we cannot say on this record that it unambiguously did so. Accordingly, we construe it as nonfinal, pursuant to our policy of construing any ambiguity to preserve the right of appeal. We conclude that Admiral's appeal of the July 8 judgment is timely.

---

[1] *Admiral Ins. Co. v. Paper Converting Machine Co.,* Case No. 2009AP2099, unpublished slip op. (Wis. Ct. App. Dec. 21, 2010), dismissing Admiral's appeal of an order of the circuit court for Outagamie County, Mitchell J. Metropulos, J., as untimely; *Admiral Ins. Co. v. Paper Converting Machine Co.,* No. 2009AP2099, unpublished order (Wis. Ct. App. Jan. 14, 2011) (denying Admiral's motion for reconsideration).

¶ 4. Regarding the merits, Admiral acknowledges that it entered into an agreement with its insured, PCMC, to contribute $2 million towards the settlement of a lawsuit, but it contends that the oral funding agreement is unenforceable because it does not meet the requirements of Wis. Stat. § 807.05.[2] Even if the contract is enforceable, Admiral asserts that it is entitled to restitution, either because PCMC was unjustly enriched by its contribution of $2 million towards the settlement or because of Admiral's mistake of fact.

¶ 5. We conclude that the requirements of Wis. Stat. § 807.05 are inapplicable, and the funding agreement is an enforceable contract. We further conclude that under these circumstances, an insurer cannot recover payments based on an unjust enrichment theory, and Admiral's asserted mistake of fact does not provide grounds for voiding the contract.

¶ 6. Accordingly, we reverse the court of appeals.

I

¶ 7. The following facts are undisputed. PCMC manufactures paper machines. Elizabeth Young was severely injured on February 22, 2005, while working on a machine that was manufactured by PCMC, and PCMC learned about the accident shortly thereafter. At the time, PCMC was self-insured.

¶ 8. Several months later, PCMC was acquired by another company, and it purchased additional insurance coverage. PCMC maintained a self-insured retention of $250,000 (which included defense costs), and

---

[2] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated. Wisconsin Stat. § 807.05 governs the enforceability of agreements, stipulations, and consent between parties and their attorneys.

additionally, it purchased two relevant policies: (1) a claims-made policy issued by Admiral Insurance Company that provided $2 million in products/completed operations liability coverage;[3] and (2) an excess policy issued by Chubb Custom Insurance.

¶ 9. As part of its application for insurance, PCMC disclosed all pending legal cases as well as known accidents that could reasonably result in litigation. PCMC's disclosure was made to Admiral's underwriting department, and it included the accident in which Young was injured.

¶ 10. Approximately one year after the policies were issued, Young filed suit against PCMC, and PCMC notified Admiral's claims department of the litigation. Although Admiral was not named as a party, it opened a file on the case and hired an attorney to represent its interest in the lawsuit. By letter, Admiral informed PCMC that it had been "monitoring the . . . claim and determined that there is exposure to the Admiral policy."

¶ 11. Admiral participated in mediation, and during settlement negotiations, it entered into a funding agreement with PCMC to contribute its policy limits, $2 million, toward settlement of the lawsuit. Admiral admits that the attorney it sent to the settlement negotiations acted as its representative or agent, and that Admiral provided the attorney with authority to contribute the policy limits to achieve settlement without any intent to seek reimbursement from PCMC.

---

[3] The Admiral policy promised to cover certain claims that were first made against the insured within the policy period, but it did not cover any property damage or bodily injury which occurred before September 7, 1995.

¶ 12. Ultimately, Young agreed to accept $3.5 million to settle the suit. A written settlement agreement was signed by PCMC's attorney, Young, and Young's attorney, but not by Admiral.

¶ 13. After the settlement agreement was negotiated but prior to sending its payment under the funding agreement, Admiral changed its position on coverage. It contended, for the first time, that there was no coverage for the Young accident under the known claims exclusion of its policy.[4]

¶ 14. Admiral implied that it would withhold payment unless PCMC agreed that it had reserved the right to seek reimbursement from PCMC in a subsequent lawsuit.[5] PCMC replied that Admiral was bound

----

[4] The known claims endorsement states that it modifies insurance provided under commercial general liability coverage, commercial property coverage, and professional liability coverage. It makes no mention of products/completed operations liability coverage, the type of coverage purchased by PCMC. The text of the exclusion is as follows: "It is agreed this insurance does not apply to liability arising out of any claim or 'occurrence', or circumstance or condition that may result in a claim or 'occurrence', known or which reasonably should have been known by an insured prior to 09/07/2005."

On July 12, 2007, Admiral sent a letter to PCMC which relied on this exclusion in disclaiming coverage: "We have now been advised that Paper Converting Machine Company knew of the claim of Elizabeth Young at least as early as July 22, 2005 (when the claim was disclosed by Paper Converting Machine Company on a 'claims audit' form). The fact that the claim of Elizabeth Young was known to Paper Converting Machine Company prior to September 7, 2005, brings this claim clearly and unambiguously within the 'known claims' exclusion of the policy."

[5] On July 16, it sent the following letter: "Admiral Insurance Company has denied, and continues to deny, coverage for

by the funding agreement and had no right to seek reimbursement. Admiral paid the policy's maximum, $2 million, as it had agreed to do.[6]

¶ 15. Admiral then filed an action against PCMC, seeking a declaration that its policies provided no coverage for Young's claim and reimbursement of the $2 million.[7] PCMC answered and filed a separate counterclaim for attorney fees.[8] All parties moved for summary judgment.

¶ 16. The circuit court entered a decision and order on March 26, 2009. It concluded that PCMC was

---

the claims arising out of the Elizabeth Young incident. However, as long as all interested parties agree that by participating in the settlement with the Elizabeth Young plaintiffs reflected in the 'Post Mediation Agreement' in the Outagamie County Circuit Court lawsuit, Admiral does not waive, and continues to expressly reserve, its coverage defenses in this matter, then Admiral will agree to advance money toward that settlement as if it did afford coverage, leaving the resolution of the coverage issue to be later determined."

[6] The excess insurer, Chubb, paid $1.3 million, and likewise attempted to reserve the right to seek reimbursement.

[7] Chubb also filed a declaratory action. It asserted that if there was no coverage under the Admiral policy, then there was likewise no coverage under its excess policy. In its brief to this court, Chubb incorporated all arguments advanced by Admiral, and it presented no substantive arguments of its own. Therefore, from this point forward, we make no separate mention of Chubb in this opinion.

[8] The counterclaim provided: "PCMC hereby requests its attorney's fees as prevailing party in this litigation under Wisconsin Statute Section 806.04(8) [the Uniform Declaratory Judgment Act]."

We note that in PCMC's answer, its request for attorney fees was not specifically designated as a counterclaim. However, Admiral refers to it as a counterclaim throughout its brief, and PCMC takes no issue with that designation.

entitled to summary judgment because the oral settlement agreement between Admiral and PCMC was enforceable and there was no mutual mistake of fact. The circuit court's order provided as follows: "Based on the foregoing, the Court denies the summary judgment motions filed on behalf of Admiral and Chubb. The Court grants the summary judgment motion in favor of PCMC. The Court hereby orders this case dismissed."

¶ 17. The parties assert that after the entry of this order, they agreed to delay entry of a final judgment because PCMC intended to pursue its counterclaim for attorney fees, which had not been addressed in the court's decision and order. They assert that PCMC ultimately decided not to pursue this counterclaim.[9]

¶ 18. The circuit court entered judgment on July 8, 2009. The judgment provided, "This is a final judgment for purposes of appeal."

¶ 19. Admiral appealed on August 12, 2009. In an unpublished opinion, the court of appeals affirmed the circuit court. *Admiral Ins. Co. v. Paper Converting Machine Co.,* unpublished slip op., No. 2009AP2099 (Wis. Ct. App. Dec. 7, 2010). It reasoned that Admiral entered into a valid and enforceable oral agreement with PCMC to pay money toward the settlement of the Young claim. It rejected Admiral's argument that it

---

[9] Admiral moved the court of appeals to supplement the record with the parties' correspondence. The court of appeals denied Admiral's motion. *Admiral Ins. Co. v. Paper Converting Machine Co.,* No. 2009AP2099, unpublished order (Wis. Ct. App. Jan. 14, 2011). Although Admiral included some correspondence in its appendix here, it acknowledges that this information is not included in the record, and it has not made a motion before this court to supplement the record.

should be relieved of this agreement based on a mistake of fact or some equitable theory. *Id.*, ¶¶ 11–13.

¶ 20. In a footnote, the court of appeals questioned the timeliness of the appeal, given that the March 26 decision and order appeared to be final and Admiral's notice of appeal was not filed within 90 days of that order. *Id.*, ¶ 1 n.1. However, it concluded that PCMC had waived any objection to the court's jurisdiction by declining to object to the timing of the appeal. *Id.*

¶ 21. The following day, the court of appeals withdrew its opinion on its own motion. *Admiral Ins. Co. v. Paper Converting Machine Co.*, unpublished order, No. 2009AP2099 (Wis. Ct. App. Dec. 8, 2010). As it later explained, "A court must raise questions of subject matter jurisdiction even if the parties do not, and subject matter jurisdiction cannot be obtained by a party's waiver or consent." *Admiral Ins. Co. v. Paper Converting Machine Co.*, No. 2009AP2099, unpublished slip op., ¶ 3 (Wis. Ct. App. Dec. 21, 2010). The court of appeals dismissed Admiral's appeal as untimely. *Id.* It likewise denied Admiral's motion for reconsideration. *Admiral Ins. Co. v. Paper Converting Machine Co.*, No. 2009AP2099, unpublished order, (Wis. Ct. App. Jan. 14, 2011).

II

¶ 22. In this case, we are required to review the court of appeals' determination that it lacked subject matter jurisdiction because Admiral's appeal was untimely. Admiral's appeal was untimely if the March 26 order was a final order for purposes of appeal. This presents a question of law that we review indepen-

dently of the court of appeals' determination. *Kenosha Prof'l Firefighters v. City of Kenosha,* 2009 WI 52, ¶ 20, 317 Wis. 2d 628, 766 N.W.2d 577.

¶ 23. If we conclude that the appeal is timely, we will also review the circuit court's decision to grant summary judgment in favor of PCMC. A circuit court's grant or denial of summary judgment is a question of law which we review independently of the circuit court.[10] *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

¶ 24. We address these issues in turn.

## III

¶ 25. In Wis. Stat. § 808.03(1), the legislature set forth the standard for determining whether a judgment or order is final for purposes of appeal: "A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties . . . ." To determine whether the March 26 decision was final for purposes of appeal, the question is whether it "dispose[d] of the entire matter in litigation as to one or more of the parties."[11]

---

[10] Initially, the court of appeals affirmed the circuit court's grant of summary judgment, but it later vacated that decision and dismissed the appeal on the basis of subject matter jurisdiction. Even if we reverse the court's dismissal of the appeal, there is no need to reinstate the court of appeals' opinion on the merits of the case, given that our review of the circuit court's grant of summary judgment is independent.

[11] Here, there is little doubt that the parties did not understand or intend the March 26 decision and order to be final for purposes of appeal. However, our case law makes clear that the intentions of the circuit court and the parties do not

¶ 26. We recently addressed what it means for a judgment or order to be final in *Wambolt v. West Bend Mutual Insurance Co.,* 2007 WI 35, 299 Wis. 2d 723, 728 N.W.2d 670. In that case, we discussed the difference between deciding an issue in a written memorandum decision and disposing of a matter in litigation.

■

¶ 27. We explained that a memorandum decision that decided all the substantive legal issues, but did not explicitly dispose of the entire matter in litigation, was not final for purposes of appeal. To constitute a final order or judgment, the document must explicitly dismiss or adjudge the entire matter in litigation as to one or more parties. *Id.,* ¶ 35. If the language of the document only arguably disposes of the entire matter in litigation, that is, if there is some ambiguity as to whether the language of the order or judgment disposes of the entire matter in litigation as to one or more of the parties, then we will construe the ambiguity to preserve the right of appeal. *Id.,* ¶ 46.

¶ 28. In *Wambolt,* we acknowledged that the question of what constitutes a final order or final judgment "continue[d] to arise despite our past efforts to provide certainty," and that uncertainty was "unacceptable in

render nonfinal an order that actually "disposes of the entire matter in litigation as to one or more of the parties." *Wambolt v. West Bend Mut. Ins. Co.,* 2007 WI 35, ¶¶ 30 n.9, 31, 299 Wis. 2d 723, 728 N.W.2d 670; *Kenosha Prof'l Firefighters v. City of Kenosha,* 2009 WI 52, ¶ 30 n.38, 317 Wis. 2d 628, 766 N.W.2d 577; *see also Heritage Mut. Ins. Co. v. Thoma,* 45 Wis. 2d 580, 587, 173 N.W.2d 717 (1970). As the court of appeals explained in this case, it is the language of the order or judgment, and not anyone's intentions, upon which the inquiry is based. *Admiral Ins. Co. v. Paper Converting Machine Co.,* No. 2009AP2099, unpublished order, at 2 (Wis. Ct. App. Jan. 14, 2011).

our system where the determination of finality is the lynchpin for jurisdiction on appeal." *Id.,* ¶ 41. Therefore, going forward, we required that final orders and final judgments state that they are final for purposes of appeal. *Id.,* ¶ 44. We instructed appellate courts to construe any ambiguities in the order or judgment to preserve the right of appeal. *Id.,* ¶ 46.

¶ 29. The focus of the ambiguity inquiry is on the language of the order or judgment, not on the finality statement. The absence of a finality statement cannot be used to create ambiguity when it is unambiguous that the order or judgment disposed of the entire matter in litigation as to one or more of the parties. The *Wambolt* court's purpose in requiring a statement of finality was to increase clarity and the efficient administration of justice. However, if the lack of a finality statement created an ambiguity, the time for appeal of judgments and orders that explicitly dispose of the entire matter in litigation would be indefinitely extended, and the efficient administration of justice would be frustrated.

¶ 30. Here, the March 26 decision and order stated: "The court hereby orders this case dismissed." On its face, that language explicitly disposes of the entire matter in litigation between the parties and the order would appear to be final for purposes of appeal. *See Tyler v. The RiverBank,* 2007 WI 33, ¶ 22, 299 Wis. 2d 751, 728 N.W.2d 686 (concluding that a statement that "the claims of Plaintiff are dismissed with prejudice" was an explicit statement disposing of the entire matter in litigation); *Sanders v. Estate of Sanders,* 2008 WI 63, ¶ 30, 310 Wis. 2d 175, 750 N.W.2d 806 (concluding that a statement that all claims were "dismissed on the merits" was an explicit statement disposing of the entire matter in litigation).

¶ 31. Nevertheless, Admiral contends that the March 26 order did not actually dispose of the entire matter in litigation between the parties because a "substantive issue" remained. In *Wambolt,* we acknowledged that an order which purports to dispose of the entire matter in litigation might not actually do so. 299 Wis. 2d 723, ¶¶ 33 n.10, 46. We explained: "It is certainly the case where substantive issues remain, a document dismissing or adjudging only part of the action cannot constitute a final order or final judgment for purpose of appeal under § 808.03(1)." *Id.,* ¶ 33 n.10.[12]

■

¶ 32. In this case, PCMC filed a counterclaim for attorney fees, and that counterclaim was not addressed in the parties' motions for summary judgment or in the court's March 26 decision and order. We turn then to examine Admiral's argument that the pendency of PCMC's counterclaim for attorney fees prevented the order from actually disposing of the entire matter in litigation between the parties.

■

¶ 33. Longstanding Wisconsin law provides that the pendency of a claim for attorney fees under a fee-shifting statute does not affect the finality of a judgment that disposes of the matter in litigation. In *Leske v. Leske,* 185 Wis. 2d 628, 633, 517 N.W.2d 538

---

[12] However, we have warned that a test which focuses on "whether all substantive issues have been decided might result in an up-tick in late-filed appeals and collateral litigation over whether the time to appeal began." *Wambolt,* 299 Wis. 2d 723, ¶ 38 (quoting the amicus brief of the Appellate Practice Section of the State Bar of Wisconsin). We reiterated that the touchstone is the statutory standard—whether the judgment or order disposes of the entire matter in litigation as to one or more parties. *Id.,* ¶ 33 n.10.

(Ct. App. 1994), the court of appeals acknowledged that a judgment or order dismissing a complaint is not final if a counterclaim between the parties remains unresolved, but it determined that "the pendency of a claim for attorney's fees under a specific fee-shifting statute does not render a judgment or order nonfinal, provided that the judgment or order disposes of all of the substantive causes of action between the parties."[13] Had PCMC's pending counterclaim been made under a fee-shifting statute, it is clear that it would not affect the finality of the March 26 order.[14]

¶ 34. However, Admiral asserts that PCMC's counterclaim was not "the routine variety of taxation of

---

[13] *See also Kenosha Prof'l Firefighters,* 317 Wis. 2d 628, ¶ 15 n.10 (quoting *Leske*); *Campbell v. Campbell,* 2003 WI App 8, 259 Wis. 2d 676, 659 N.W.2d 106 (Ct. App. 2002) (a family law order was final despite a pending request for attorney fees under Wis. Stat. § 767.262 (1999–2000)); *Hartman v. Winnebago Cty.,* 216 Wis. 2d 419, 574 N.W.2d 222 (1998) (pending claim for attorney fees under 42 U.S.C. § 1983 did not affect finality of judgment); *Laube v. City of Owen,* 209 Wis. 2d 12, 13, 561 N.W.2d 785 (Ct. App. 1997) (concluding that an order in a condemnation action under Wis. Stat. ch. 32 was final, even though a request for an award of litigation expenses under Wis. Stat. § 32.28 remained pending).

[14] As the court of appeals explained, the *Kenosha Professional Firefighters* case stands for the proposition that "a final judgment or final order pertaining to fees or costs may be appealed separately from any appeal of the merits of the underlying dispute." *Kenosha Prof'l Firefighters,* 317 Wis. 2d 628, ¶ 15. Like the court of appeals, we conclude that "*Kenosha Professional Firefighters* does not overrule the longstanding holding that the pendency of a claim for costs and fees does not affect the appealability of a judgment that otherwise disposes of the matters in litigation." *Admiral Ins. Co. v. Paper Converting Machine Co.,* No. 2009AP2099, unpublished order, at 2 (Wis. Ct. App. Jan. 14, 2011).

costs" or a claim for attorney fees under a fee-shifting statute. Rather, it asserts, it was "a substantive issue that required briefing by both of the parties."

¶ 35. In the record before this court, the nature of PCMC's counterclaim is unclear. The counterclaim makes reference to the Uniform Declaratory Judgment Act, Wis. Stat. § 806.04(8), which is not a fee-shifting statute. Rather, it permits parties to pursue "[f]urther relief . . . whenever necessary or proper." The pleading does not specify the theory of law upon which PCMC's counterclaim was based. Further, the court of appeals denied Admiral's motion to supplement the record with information pertinent to PCMC's counterclaim. On this record, we cannot determine whether PCMC's counterclaim was based on, for example, an asserted contractual right or other theory of law which might take it outside the rule set forth in *Leske*.

¶ 36. Under these circumstances, although the March 26 order arguably disposed of the entire matter in litigation between the parties, we cannot say on this record that it unambiguously did so. Accordingly, we construe it as nonfinal, pursuant to our policy of construing any ambiguity to preserve the right of appeal. We conclude that Admiral's appeal of the July 8 judgment is timely.

## IV

¶ 37. Having construed the ambiguity to preserve Admiral's right to appeal, we turn to the merits of the appeal. We must decide whether the circuit court properly granted summary judgment in favor of PCMC.

¶ 38. Admiral asserts that there was no coverage for the Young accident under its policy because PCMC knew about the accident as evinced by the disclosure

307

PCMC submitted to Admiral's underwriting department. Admiral bases its coverage argument on the known loss doctrine, *see State v. Hydrite Chemical Co.,* 2005 WI App 60, 280 Wis. 2d 647, 695 N.W.2d 816 and *American Family Mutual Insurance Co. v. Bateman,* 2006 WI App 251, 297 Wis. 2d 828, 726 N.W.2d 678, and the policy's exclusion for known claims.[15]

■

¶ 39. Coverage is a question of law, *Doyle v. Engelke,* 219 Wis. 2d 277, 284, 580 N.W.2d 245 (1998), and under proper circumstances, it might well be decided on summary judgment. Here, the circuit court made no determination about whether there is coverage. Rather, it appeared to assume that there was no coverage, and it granted summary judgment to PCMC because it determined that the settlement negotiations produced a second enforceable contract.

¶ 40. We observe that Admiral's argument about coverage leaves unanswered questions. Nevertheless, like the circuit court, we decline to decide the coverage question, and we assume, without deciding, that there was no coverage under the policy.

¶ 41. The insurance policy is a contract between Admiral and PCMC. During the settlement negotiations, PCMC and Admiral entered into a second agreement, this one oral, under which Admiral agreed to contribute $2 million to the settlement in exchange for

---

[15] PCMC counters that the known loss doctrine is inapplicable and that there is at least arguable coverage under the policy. In particular, the exclusion upon which Admiral relies expressly modifies commercial general liability coverage, commercial property coverage, and professional liability coverage, but the exclusion makes no mention of products/completed operations liability coverage, the coverage actually purchased by PCMC.

a written release. At the time, it thought that there was exposure under the policy. Admiral admits that the attorney who was sent to the settlement negotiations acted as its representative or agent, that Admiral provided the attorney with authority to contribute the policy limits to achieve settlement without any intent to seek reimbursement, and that Admiral agreed to pay $2 million as its contribution to settlement.

¶ 42. Nevertheless, Admiral asserts that the funding agreement is unenforceable because it was not made in court and not memorialized in writing at the time it was made. It relies on Wis. Stat. § 807.05, which governs agreements and stipulations between parties to litigation.

■

¶ 43. Wisconsin Stat. § 807.05 provides as follows:

> No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court or during a proceeding conducted under s. 807.13 or 967.08 and entered in the minutes or recorded by the reporter, or made in writing and subscribed by the party to be bound thereby or the party's attorney.

¶ 44. Admiral's reliance on this statute is unfounded because it does not apply to the funding agreement. The statute addresses agreements "between parties or their attorneys," and Admiral was not a party to the lawsuit between Young and PCMC.

¶ 45. In *Adelmeyer v. Wisconsin Electric Power Co.*, 135 Wis. 2d 367, 400 N.W.2d 473 (Ct. App. 1986), the court concluded that an oral settlement agreement between the parties to the suit was void at its inception because it did not conform to the requirements of Wis.

Stat. § 807.05. The court noted that "the statute is an exception to the usual rule that oral contracts are binding." *Id.* at 369. In this case, given that the statute is inapplicable, the funding agreement falls under the "usual rule" that oral agreements are enforceable.

■

¶ 46. Like the circuit court and the court of appeals, we have determined that the funding agreement between Admiral and PCMC constitutes an enforceable contract. Nevertheless, under certain circumstances, a party can be relieved of its contractual obligations. Admiral asserts that it is entitled to restitution because PCMC was unjustly enriched by its contribution of $2 million toward the settlement agreement.[16] It also argues that it should be relieved of its obligation under the funding agreement because of its mistake of fact. We address each argument in turn.

■

¶ 47. Under these circumstances, Wisconsin law, *General Accident Fire & Life Assurance Corp. v. Bergquist,* 15 Wis. 2d 166, 111 N.W.2d 900 (1961), provides that an insurer cannot recover payments it made pursuant to a settlement agreement based on an unjust enrichment theory. *Bergquist* instructs that, "if [the] insurer's cause of action for the amount paid in settlement has any merit, it must arise from contract." *Id.* at 172.

---

[16] The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance or retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof. Wis JI—Civil 3028.

¶ 48. In *Bergquist,* the insurer contested that there was coverage for its insured's liability, but the insurer nevertheless agreed to defend pursuant to a reservation of rights. When presented with a settlement agreement that was advantageous to the insured, the insurer agreed to the settlement under the condition that the settlement "shall not have any effect whatsoever so far as the relative rights or liabilities of [Bergquist] and the General Accident Fire & Life Assurance Corporation, Ltd., . . . relative . . . to the coverage or validity of any insurance [policy]." *Id.* at 168. That condition was incorporated into the settlement agreement.

¶ 49. The insurer then sought reimbursement from the insured based on two theories: contract and unjust enrichment. The court concluded that there were no grounds for unjust enrichment: "if [the] insurer's cause of action for the amount paid in settlement has any merit, it must arise from contract." *Id.* at 172. The *Bergquist* court explained, "Were we to decide otherwise, every insurer could hold open a policy defense, however dubious, when making a settlement." *Id.*

¶ 50. Because Admiral cannot make a claim for unjust enrichment, its citation to the *Restatement (Third) of Restitution and Unjust Enrichment* (2011) is unavailing.[17] We turn next to the argument about mistake of fact.

¶ 51. Admiral contends that when it agreed to contribute $2 million to the settlement, it made a mistake of fact in that it did not know that PCMC had

---

[17] Likewise, Admiral's citation to *Buckett v. Jante,* 2009 WI App 55, 316 Wis. 2d 804, 767 N.W.2d 376, provides no support because *Buckett* is an unjust enrichment case and under *Bergquist,* no claim for unjust enrichment is available.

knowledge of the Young accident prior to purchasing the policy. Admiral explains that its claims department and its underwriting department are separate entities, and that the claims department agreed to contribute to the settlement because it was unaware that PCMC had disclosed the Young accident to Admiral's underwriting department. It argues: "Although information on that subject would have been available in Admiral's files had [the claims department] known to look for it, the claims personnel had no reason to investigate that aspect of the claim."

¶ 52. The attorney Admiral hired to monitor and settle the litigation stated in an affidavit: "When I attended the June 28, 2007 mediation on behalf of Admiral, I had no idea that PCMC was aware of Elizabeth Young's accident prior to the inception of the policy. I am confident that none of my contacts at Admiral had any idea either. I did not review the contents of Admiral's underwriting file prior to the mediation."

██

¶ 53. Initially, we observe that Admiral cannot claim it made a mistake of fact because the underwriting department knew that PCMC had disclosed the Young accident, and its knowledge is imputed to Admiral's claims department. The general rule of imputation is well established in Wisconsin. A corporation is charged with constructive knowledge of all material facts of which its agent receives notice while acting within the scope of employment, even if the agent did not actually communicate the knowledge to the corporation. *Suburban Motors of Grafton, Inc. v. Forester,* 134 Wis. 2d 183, 192, 396 N.W.2d 351 (Ct. App. 1986) (quoting 3 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 790 (rev. perm. ed. 1975)); *see also Tele-Port, Inc. v. Am.*

*Mobile Commc'ns, Inc.,* 2001 WI App 261, ¶ 17, 248 Wis. 2d 846, 637 N.W.2d 782; *Congar v. Chicago & N.W. Ry. Co.,* 24 Wis. 157 (1869).

¶ 54. Nevertheless, Admiral cites *Ryan v. Rockford Insurance Co.,* 85 Wis. 573, 55 N.W. 1025 (1893), *Ryder v. State Farm Mutual Auto Insurance Co.,* 51 Wis. 2d 318, 187 N.W.2d 176 (1971), and *Nugent v. Slaght,* 2001 WI App 282, 249 Wis. 2d 220, 638 N.W.2d 594, for the proposition that its underwriting department's knowledge should not be imputed to its claims department and the attorney it hired to settle the case. All three cases are inapposite.

¶ 55. The argument in *Ryan* was that an agent who requested a premium from the insured somehow waived the insurer's coverage defenses on an outstanding claim. The court concluded that the agent did not have any authority to bind the company. 85 Wis. 2d at 578. Here, it is undisputed that Admiral's underwriting department had authority to bind the insurer by issuing a policy, and further, that Admiral's attorney was sent to the settlement negotiations with the express purpose of binding Admiral to the funding agreement. Further, neither *Ryder* nor *Nugent* addressed a situation in which an insurer, after entering into an enforceable contract to fund a settlement, attempted to set aside the contract based on a mistake of fact.[18]

■

¶ 56. Here, the underwriting department knew that PCMC had disclosed the Young accident. Because its knowledge is imputed to Admiral's claims depart-

---

[18] PCMC argues that the underwriting department's knowledge of the disclosure is likewise imputed to Admiral under Wis. Stat. § 631.09(1). Because we reject Admiral's argument that it made a mistake of fact, we need not address this argument.

ment, Admiral cannot claim mistake of fact. Rather, any mistake made by the claims department would be a mistake of law, that is, a mistaken determination that there was coverage under the policy. A mistake of law does not provide a basis for voiding a contractual obligation. *St. Norbert College Found., Inc. v. McCormick,* 81 Wis. 2d 423, 432, 260 N.W.2d 776 (1978).

¶ 57. In any event, even if Admiral did make a mistake of fact, that alone would not be grounds for restitution. Wisconsin law is clear that there must be a mutual mistake of fact to void a contract. *Grand Trunk W. R.R. Co. v. Lahiff,* 218 Wis. 457, 261 N.W. 11 (1935).

¶ 58. Here, there is no dispute that PCMC was aware that it had disclosed the Young accident prior to purchasing the policy. Accordingly, any mistake was not mutual, and does not provide a basis for voiding the funding agreement. Thus, the circuit court properly granted summary judgment in favor of PCMC.

## V

¶ 59. In sum, under these circumstances, although the March 26 order arguably disposed of the entire matter in litigation between the parties, we cannot say on this record that it unambiguously did so. Accordingly, we construe it as nonfinal, pursuant to our policy of construing any ambiguity to preserve the right of appeal. We conclude that Admiral's appeal of the July 8 judgment is timely.

¶ 60. Additionally, we conclude that the requirements of Wis. Stat. § 807.05 are inapplicable, and the funding agreement is an enforceable contract. We further conclude that under these circumstances, an insurer cannot recover payments based on an unjust

enrichment theory, and Admiral's asserted mistake of fact does not provide grounds for voiding the contract.

*By the Court.*—The orders of the court of appeals are reversed.