COURT OF APPEALS
DECISION
DATED AND FILED

November 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1904**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CV856

**IN COURT OF APPEALS
DISTRICT III**

---

**JX ENTERPRISES, INC.,**

   **PLAINTIFF-RESPONDENT,**

 **V.**

**DAD ACRES, LLC AND DANIEL R. ANGOTTI, JR.,**

   **DEFENDANTS-APPELLANTS.**

---

APPEAL from a judgment of the circuit court for Brown County: MARC A. HAMMER, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. DAD Acres, LLC and Daniel R. Angotti, Jr., ("Angotti")[1] appeal a summary judgment granted in favor of JX Enterprises, Inc. ("JX"). Angotti argues that the circuit court erred in granting JX summary judgment for the unpaid cost of repairs it made to Angotti's truck because there were material questions of fact as to whether those costs were covered under warranty. JX argues this court lacks jurisdiction over this appeal because the decision and order from which Angotti appeals is not a final order or judgment for purposes of appeal. We determine that we have jurisdiction over the appeal and that the circuit court correctly granted summary judgment. We therefore affirm.

## BACKGROUND

¶2     Daniel is the owner and sole member of DAD Acres. Through DAD Acres, Daniel owns and operates a 2004 Peterbilt Model 384[2] semi-tractor ("the truck"). Prior to 2017, Angotti had a refurbished Cummins ISX engine installed in the truck.

¶3     In November 2016, Angotti's truck engine began leaking coolant. Angotti took the truck to JX, a Peterbilt semi-tractor dealership and service center located in De Pere. JX is also an authorized Cummins Corporation service location.

---

[1] We refer to the appellants together as Angotti. When it is necessary to reference them individually, we refer to Angotti as Daniel.

[2] There is some inconsistency in the record as to whether the 2004 Peterbilt is a model 384 or a model 379. The appellants' brief states that it is a model 384, whereas the respondent's brief says it is a model 379. The record reflects both a model 384 and 379. Despite this discrepancy, we determine that both parties are referring to the same Peterbilt as reflected by the consistent vehicle identification number.

¶4      JX's Cummins-certified technicians discovered that the coolant was leaking due to an engine block crack. JX told Angotti that it had the option of installing a remanufactured Cummins ReCon engine or replacing the existing engine block. Angotti first asked JX to patch the cracked engine block with epoxy; however, the epoxy did not hold. Angotti then asked JX to replace the engine block.

¶5      On or about December 8, 2016, the engine block replacement was completed. Prior to picking up the truck, Angotti signed an invoice which included a Cummins warranty covering the repair or replacement of the parts newly installed by JX for one year or 100,000 miles, whichever occurs first. As relevant here, the engine crankshaft was not one of the items replaced or warrantied.

¶6      In November 2017, Angotti returned the truck to JX, complaining of a clunking noise and oil leak from the front of the engine. JX technicians inspected the truck and determined it had a broken crankshaft. JX explained to Angotti that because the crankshaft was not one of the parts it replaced in 2016, it was not included in the warranty that was issued at that time. Angotti then requested that JX install a remanufactured Cummins ReCon engine.

¶7      On December 6, 2017, Daniel completed a JX Enterprises Credit Application and Personal Guarantee on behalf of Angotti. The application was accepted, and JX installed a remanufactured Cummins ReCon engine in the truck. The engine came with a separate warranty, which specifically covers failures of the engine cylinder block, crankshaft, camshafts and connecting rods for three years or 300,000 miles or 10,000 hours of operation, whichever occurs first.

¶8      After the repair, Angotti paid $8,000 and JX released the truck. However, Angotti then refused to pay the remaining balance due of $28,020.37, claiming that all work performed by JX in December 2017 should have been covered by the 2016 warranty.

¶9      JX filed this lawsuit against Angotti seeking the unpaid amount of $28,020.37 plus interest accrued, costs, and attorney fees. Angotti counterclaimed for the $8,000 it paid toward the replacement and installation of the remanufactured Cummins ReCon engine.

¶10     JX moved for summary judgment on the amount claimed due, and on August 13, 2019, the circuit court entered a written decision granting summary judgment in favor of JX and against Angotti. The court thereafter signed an order for judgment on September 30, 2019, which included in the judgment amount an award to JX of its attorney fees and costs. The September 30 order contained language stating that it was a final order for purposes of appeal. Angotti then filed a notice of appeal on September 30, appealing from the court's August 13, 2019 decision.

## DISCUSSION

*I. Jurisdiction*

¶11     We first address JX's claim that we lack jurisdiction over this appeal because Angotti appeals from a nonfinal order. Whether we have jurisdiction to consider an appeal is a question of law that we review de novo. *See* ***Nickel v. United States,*** 2012 WI 22, ¶20, 339 Wis. 2d 48, 810 N.W.2d 450.

4

¶12     WISCONSIN STAT. § 808.03(1) (2017-18)[3] sets forth the standard for determining whether a judgment or order is final for purposes of appeal: "A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties ...." Additionally, our supreme court has required that each final judgment or order entered after September 1, 2007, include a statement that it is a final judgment or order for purposes of appeal. *Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶¶39, 49, 299 Wis. 2d 723, 728 N.W.2d 670. Nevertheless, "[a]bsent such a statement, appellate courts should liberally construe ambiguities to preserve the right of appeal." *Id.*, ¶4; *see also* *Kenosha Pro. Firefighters Local 414 v. City of Kenosha*, 2009 WI 52, ¶31 317 Wis. 2d 628, 766 N.W.2d 522 ("When a document does not explicitly state that it is dismissing or adjudging the entire matter as to one or more of the parties, the appropriate course of action for an appellate court 'is to liberally construe documents in favor of timely appeals.'").

¶13     JX argues that Angotti cannot appeal from the August 13, 2019 decision and order because it did not contain a statement that it was a final judgment or order for purposes of appeal as required by *Wambolt*. JX argues that the August 13 decision could not have been a final order because the circuit court had not yet addressed the issue of costs and the amount of an attorney fees award. These issues were not determined until September 30, 2019 when the court entered a judgment containing the statement required by *Wambolt*.

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶14 In response, Angotti argues that the lack of a finality statement is not dispositive. In *Wambolt*, the court stated that "neither the label of a document nor the subsequent actions taken by the circuit court is dispositive of the document's finality under [WIS. STAT.] § 808.03(1)." *Wambolt*, 299 Wis. 2d 723, ¶30. In addition, Angotti argues that it is a "longstanding holding that the pendency of a claim for costs and fees does not affect the appealability of a judgment that otherwise disposes of the matters in litigation." *McConley v. T.C. Visions, Inc.*, 2016 WI App 74, ¶9, 371 Wis. 2d 658, 885 N.W.2d 816 (quoting *Admiral Ins. Co. v. Paper Converting Mach. Co.*, 2012 WI 30, ¶33 & n.14, 339 Wis. 2d 291, 811 N.W.2d 351).

¶15 We conclude that we have jurisdiction to consider the issues on appeal regardless of whether Angotti technically noticed its appeal from the nonfinal August 13, 2019 summary judgment decision. But, we do so for a reason ignored by the parties. Namely, Angotti's notice of appeal was filed on September 30, 2019, the same date that the circuit court ordered that a judgment be entered addressing all remaining issues not resolved by the August 13 decision, and containing the finality language required by *Wambolt*. Although the notice of appeal referenced a desire to appeal from the August 13 order, the case was completed and final as to all parties on the date that Angotti's notice of appeal was filed and, thus, the case was complete for purposes of any appeal. On appeal of a final order, WIS. STAT. RULE 809.10(4) allows an appellant to obtain review of all nonfinal orders adverse to the appellant and favorable to the respondent made in the action or proceeding that were not previously appealed and ruled on. Accordingly, the notice of appeal's reference to the August 13 order does not prevent us from exercising jurisdiction, as this is an appeal commenced after entry of a final judgment or order.

*II. Summary Judgment*

¶16    Angotti argues that material questions of fact precluded the circuit court's grant of summary judgment.  The grant or denial of a motion for summary judgment is a matter of law that this court reviews de novo.  ***Johnson v. Mt. Morris Mut. Ins. Co.***, 2012 WI App 3, ¶8, 338 Wis. 2d 327, 809 N.W.2d 53 (2011).  A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).  We independently review the interpretation of a warranty, and we do so in the same manner that we would interpret any other contract.  ***Dieter v. Chrysler Corp.***, 2000 WI 45, ¶15, 234 Wis. 2d 670, 610 N.W.2d 832.

¶17    Angotti asserts that the circuit court incorrectly stated that the sole issue before it was whether the crankshaft was covered under any warranty.  It instead argues that there are material questions of fact as to whether the crankshaft did indeed break and, if so, whether some other part of the engine covered by warranty caused it to break.  In support of this argument, it cites to the affidavit of Jason Angotti ("Jason").  Jason is a diesel mechanic who works on the fleet of trucks owned and operated by DAD Acres, and he is Daniel's son.  Jason opined that it was "highly unlikely the engine would have run if the crankshaft was broke where [JX] indicates."  He further averred that it was his "understanding the engine did run and could power the vehicle."  Additionally, Daniel's affidavit states that when he brought the truck to JX in 2017, after the rebuilt engine failed, the engine ran and had enough power to move the vehicle.

¶18    In response, JX fails to address the issue raised by Angotti, arguing instead that Angotti is incorrectly "attempting to retroactively apply the 2017 Cummins warranty to the old crankshaft". Despite the parties largely talking past each other, we conclude on our de novo review that Jason's affidavit is insufficient to create a genuine issue of material fact so as to defeat JX's summary judgment.

¶19    The affidavit of JX's service manager, Bob Kranzusch, filed in support of JX's summary judgment motion, was based upon his personal knowledge and inspection of the truck. He averred that the crankshaft was broken when the truck arrived at JX in 2017. In his responsive affidavit, Jason questions whether the engine crankshaft was broken, but he provides no evidence as to any other cause for the truck's engine problems. Further, Jason's statement that if the crankshaft did indeed break, the break may have been caused by another engine part that may have been covered by the 2016 warranty appears to be based upon nothing more than mere speculation. Jason did not examine the engine or crankshaft after the truck's breakdown. Jason's affidavit, without more, is insufficient to create a genuine issue of material fact.

¶20    Angotti next argues that it was unable to inspect the engine to specifically diagnose the cause of the 2017 breakdown because JX could not locate the old engine. Angotti is, in essence, making a "spoliation" argument without using that terminology. The intentional destruction, alteration, or concealment of material evidence is known as "spoliation." *American Fam. Mut. Ins. Co. v. Golke*, 2009 WI 81, ¶21, 319 Wis. 2d 397, 768 N.W.2d 729.

¶21    We agree with the circuit court that JX was not involved in the spoliation of evidence. After the engine replacement, Angotti opted to have the damaged engine core returned to Cummins which resulted in Angotti saving

8

$8,845 on the ReCon engine. Angotti's request to inspect the old engine was made one month after JX returned the truck and only after Angotti decided it would no longer make payments to JX for the remanufactured Cummins ReCon engine. Angotti fails to show that JX intentionally destroyed or concealed the engine in order to prevent Angotti from obtaining evidence about the cause of the engine problems.

¶22 In summary, the undisputed facts support summary judgment in JX's favor. Angotti's truck had a cracked engine block replaced in 2016 by JX. During the 2016 repair, the crankshaft was not one of the items replaced and was therefore not a warranted item under the 2016 warranty. When Angotti complained about a clunking noise from the front of the engine in 2017, JX diagnosed the problem as a broken crankshaft. Angotti has failed to produce any evidence to the contrary of the foregoing facts.

¶23 Furthermore, when JX notified Angotti of the broken crankshaft, it requested that JX install a remanufactured Cummins ReCon engine. Angotti completed a JX Enterprises Credit Application and Personal Guarantee knowing that the remanufactured Cummins ReCon engine was not covered under the 2016 warranty. Angotti paid JX $8,000 instead of disputing whether the repairs were covered under the warranty. It then opted to save $8,845 by having the engine returned to Cummins. One month after the return of the truck, Angotti refused to pay the balance due to JX. Angotti has failed to submit facts sufficient to create a genuine issue of material fact as to whether it owes JX for the balance due on the installation of the remanufactured engine. The circuit court properly granted JX's summary judgment motion.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.